# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN CHESTNUT | ) | |
| | ) | |
| PLAINTIFF, | ) | Case no. 4:16-CV-01721-PLC |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| OFFICER DAWAIN WALLACE, | ) | |
| ST. LOUIS CITY POLICE OFFICER | ) | |
| IN HIS INDIVIDUAL CAPACITY | ) | |
| | ) | |
| | ) | |
| OFFICER TIFFANY BURNS, | ) | |
| ST. LOUIS CITY POLICE OFFICER | ) | |
| IN HER INDIVIDUAL CAPACITY | ) | |
| | ) | |
| | ) | |
| OFFICER JUSTIN LUDWIG, | ) | |
| ST. LOUIS CITY POLICE OFFICER | ) | |
| IN HIS INDIVIDUAL CAPACITY | ) | |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| A MUNICIPAL CORPORATION | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**FIRST AMENDED COMPLAINT PURSUANT TO 42 U.S.C. SECTION 1983 FOR VIOLATION OF CIVIL RIGHTS PROTECTED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

**Preliminary Statement**

1. This is a civil action under 42 U.S.C. § 1983 in which Kevin Chestnut seeks relief for violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and by the United States Constitution, including the Fourth and Fourteenth Amendments.

## Jurisdiction

2. The rights this action seeks to vindicate are secured by the Constitution of the United States and 42 U.S.C. § 1983. This Court has jurisdiction as provided by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), this being an action seeking redress of Chestnut's constitutional rights.

## Venue

3. All Defendants are located geographical boundaries of the Eastern District of Missouri, Eastern Division, and all events set forth herein are located in the same. Therefore, venue is appropriate in Eastern District of Missouri, Eastern Division, as provided by 28 U.S.C. § 1391(a), (b), and (c).

## Jury Trial Demanded

4. Plaintiff Kevin Chestnut demands a jury trial for all claims pleaded herein.

## Parties

5. Plaintiff Kevin Chestnut ("Chestnut") is a resident of the City of St. Louis, Missouri, and has resided in the City of St. Louis at all relevant times to the claims set forth herein.

6. Chestnut lives in the Shaw neighborhood of St. Louis, immediately North of Tower Grove Park.

7. Defendant Officer Dawain Wallace ("Wallace") is a St. Louis City police officer.

8. At all relevant times, Wallace acted under color of Missouri law.

9. Wallace is named solely in his individual capacity.

10. Defendant Officer Tiffany Burns ("Burns") is a St. Louis City police officer.

11. At all relevant times, Burns acted under color of Missouri law.

12. Burns is named solely in her individual capacity.

13. Defendant Officer Justin Ludwig ("Ludwig") is a St. Louis City police officer.

14. At all relevant times, Ludwig acted under color of Missouri law.

15. Ludwig is named solely in his individual capacity.

16. The City of St. Louis is a municipal corporation organized and existing under Missouri law.

17. The City of St. Louis is capable of suing and being sued.

### Facts

18. On February 6, 2015, at or about 5:30 PM, Chestnut began jogging from his residence at 3859 Cleveland Avenue, just North of Tower Grove Park, heading to the perimeter jogging trail that loops in and around Tower Grove Park.

19. At that time, and at all relevant times, Chestnut was dressed in a nylon jogging suit, a bright yellow t-shirt for visibility, a colored sweatband around his head, and gloves.

20. At that time, the only item on Chestnut's person other than his clothing was his house key.

21. At or around 6:00 PM, Chestnut observed a traffic stop conducted by St. Louis Police at or near 3722 Arsenal Street.

22. Chestnut stopped to observe the traffic stop from a distance of approximately 30 feet, across Arsenal Street, while standing on or near the perimeter jogging trail within Tower Grove Park.

    a. Maps generated by Google Street View, with Plaintiff's annotations setting forth his approximate location with an "X" and the approximate location of the traffic stop with an "O", are attached hereto as Exhibit 1.

23. Chestnut did not interfere with the traffic stop in any way.

24. While observing the stop, Chestnut remained silent, and did not speak to Defendant Police Officers, the subjects of the traffic stop, or any other person.

25. While observing the stop, Chestnut was illuminated by the stopped vehicles' headlamps.

26. Defendant Police Officers approached Chestnut shortly thereafter, at approximately 6:05 PM.

27. Wallace accused Chestnut of acting suspiciously because Chestnut had stopped to watch the police action.

28. Wallace asked Chestnut for his name, his address, and frisked him.

29. Chestnut identified himself and stated that he lived in the Shaw neighborhood.

30. Wallace ordered Burns and Ludwig to handcuff Chestnut.

31. Defendant Police Officers handcuffed Chestnut.

32. Chestnut remained under arrest until approximately 6:25 PM, when St. Louis Police Sergeant Lathan appeared on scene and ordered Chestnut to be released.

33. Defendants had no basis from which to suspect Chestnut was armed.

34. At the time Chestnut was frisked, Defendants had no knowledge of any articulable fact from which to form a reasonable belief that Chestnut was armed or presented any danger to any Defendant Police Officer, or that Chestnut presented any danger to any other person.

35. At the time of Chestnut's arrest, Defendants had knowledge of no particularized, articulable facts from which to suspect that Chestnut had engaged, was engaging, or was about to engage in criminal activity generally, or any particular crime.

36. On February 20, 2015, Chestnut filed a complaint relating to his detention and arrest of February 6, 2015 with the Internal Affairs Division of the St. Louis Metropolitan Police Department.

37. Such complaint was investigated by Internal Affairs Division Commander Lt. Adam Koeln.

38. St. Louis Metropolitan Police Department, Internal Affairs Division documented such complaint and investigation under file number 15/041.

39. On the morning of October 27, 2015, Internal Affairs Division Commander Lt. Koeln phoned Chestnut to discuss Chestnut's detention and arrest of February 6, 2015.

40. During such call, Internal Affairs Division Commander Lt. Koeln advised Chestnut that pursuant to St. Louis Police policy, people who merely stop to watch police action are engaging in suspicious behavior that subjects them to stop, frisk, and arrest.

41. On March 1, 2016, Internal Affairs Division Commander Lt. Koeln mailed Chestnut a letter, a true and accurate copy of which is attached hereto as Exhibit 2, informing him that Koeln "would like to make another effort to clear up some of your [Chestnut's] misconceptions surrounding your [Chestnut's] detention on February 6, 2015," and additionally asserting, among other things, that

    "After a complete and thorough investigation, it was determined that an allegation of misconduct could not be sustained against any of the officers involved in this incident. Further, your appeal of the initial findings affirmed that no charges should be brought against any of the officers involved in this incident."

42. On March 15, 2016, Internal Affairs Division Commander Lt. Koeln mailed Chestnut a letter, a true and accurate copy of which is attached hereto as Exhibit 3, informing him that Chestnut's Internal Affairs complaint had completed and closed, asserting among other things that

    "A complete and thorough investigation revealed that an allegation of misconduct cannot be sustained against any of the officers involved in this incident."

43. Chestnut's Internal Affairs complaint was closed because Internal Affairs concluded that all officers involved in the events leading up to and concluding in Chestnut's detention and arrest acted in accordance with St. Louis City policy in detaining and arresting Chestnut for watching police in the course of their duties, despite the facts that no officer involved observed Chestnut commit a

misdemeanor or felony, no officer involved had knowledge of any particularized, articulable facts from which to suspect that Chestnut was armed, dangerous, or had engaged, was engaging, or was about to engage in criminal activity, no facts that tend to establish exigency presented themselves during any relevant time, and Chestnut was not interfering with the actions of any officer.

## COUNT I
## UNLAWFUL DETENTION AND ARREST
*Individual Capacity Defendants Only*

44. Defendants stopped and frisked Chestnut without reason to suspect that Chestnut was armed, and without knowledge of any articulable fact from which to suspect that Chestnut was armed or presented any danger to any Defendant Police Officer, or that Chestnut presented any danger to any other person.

45. Defendants arrested Chestnut without a warrant.

46. Defendants arrested Chestnut without observing him commit any crime.

47. By doing so, Defendants violated Chestnut's Fourth Amendment rights to be free from stop, frisk, and arrest without articulable facts from which to form a reasonable suspicion of wrongdoing.

48. Defendants arrested Chestnut without knowledge of any particularized, articulable facts from which to suspect that Chestnut had engaged, was engaging, or was about to engage in criminal activity generally, or any particular crime.

49. Defendants arrested Chestnut without exigent circumstances to justify such warrantless arrest.

7

50. By arresting Chestnut without a warrant, without observing Chestnut commit a misdemeanor or felony, without exigency, and without knowledge of any particularized, articulable facts from which to suspect that Chestnut had engaged, was engaging, or was about to engage in criminal activity, Defendants violated Chestnut's Fourth Amendment rights.

51. At the time of this incident, such rights were well established. *Terry v. Ohio*, 392 U.S. 1, 27 (1968), *Brown v. Texas*, 443 U.S. 47, 51–52 (1979), *Gainor v. Rogers*, 973 F.2d 1379, 1385–87 (8th Cir. 1992), *Walker v. City of Pine Bluff*, 414 F.3d 989, 993 (8th Cir. 2005).

52. As a proximate result of being stopped, frisked, and arrested by Defendant Police Officers without reason to suspect that Chestnut was armed, and without knowledge of any articulable fact from which to suspect that Chestnut was armed or presented any danger to any Defendant Police Officer, or that Chestnut presented any danger to any other person, Chestnut suffered humiliation and embarrassment.

**WHEREFORE,** Plaintiff Kevin Chestnut prays for damages under § 1983 for his unlawful detention and arrest in violation of the Fourth Amendment to the United States Constitution, for psychological and emotional injury, humiliation, embarrassment, costs, and expenses, and for attorney's fees as provided by 42 U.S.C. § 1988.

## COUNT 2
## UNLAWFUL DETENTION AND ARREST
## CAUSED BY UNCONSTITUTIONAL MUNICIPAL POLICY
### *City of St. Louis Only*

53. The City of St. Louis has a policy that authorizes St. Louis police officers stop and frisk, detain, arrest, or otherwise harass and intimidate people who observe police in the course of their duties; or in the alternative, St. Louis police officers have a custom and practice of stopping and frisking or otherwise harassing and intimidating people who observe police in the course of their duties, known to and acquiesced to by the City of St. Louis, that is pervasive, longstanding, and has the force of law.

54. Such policy or custom and practice authorized Defendant Police Officers to stop and frisk Chestnut without reason to suspect, or articulable facts from which to form a reasonable belief, that Chestnut was armed.

55. In doing so, Defendants violated Chestnut's well established Fourth Amendment Rights. *Terry v. Ohio*, 392 U.S. 1, 27 (1968), *Brown v. Texas*, 443 U.S. 47, 51–52 (1979), *Gainor v. Rogers*, 973 F.2d 1379, 1385–87 (8th Cir. 1992).

56. Pursuant to St. Louis City policy, or custom and practice of St. Louis City Police Officers known and acquiesced to by the City of St. Louis, Defendant Police Officers arrested Chestnut without a warrant, without observing Chestnut commit a misdemeanor or felony, without exigency, and without knowledge of any particularized, articulable facts from which to suspect that Chestnut had engaged, was engaging, or was about to engage in criminal activity, pursuant to an official

9

policy of the City of St. Louis, or in the alternative, pursuant to a custom or practice known and acquiesced to by the City of St. Louis that is pervasive, longstanding, and has the force of law.

57. In doing so, Defendants violated Chestnut's Fourth Amendment rights.

58. Such rights are well established. *Walker v. City of Pine Bluff*, 414 F.3d 989, 993 (8th Cir. 2005).

59. As a proximate result of being arrested by Defendants without a warrant, without Defendants observing Chestnut commit a misdemeanor or felony, without exigency, and without Defendants having knowledge of any particularized, articulable facts from which to suspect that Chestnut had engaged, was engaging, or was about to engage in criminal activity, pursuant to an official policy of the City of St. Louis, or in the alternative, pursuant to a custom or practice known and acquiesced to by the City of St. Louis that is pervasive, longstanding, and has the force of law, Chestnut suffered humiliation and embarrassment.

**WHEREFORE,** Plaintiff Kevin Chestnut prays for damages under § 1983 for his unlawful detention pursuant to St. Louis City policy or custom and practice known to and acquiesced to St. Louis in violation of the Fourth Amendment to the United States Constitution, for psychological and emotional injury, humiliation, embarrassment, costs, and expenses, and for attorney's fees as provided by 42 U.S.C. § 1988.

        **SCHWARTZ, HERMAN & DAVIDSON**

BY:   **/s / ROBERT HERMAN**
        Robert Herman,     #32376MO
        **/s/ EDWARD WELLS**

                    Edward Wells,                        #68471MO
                    8820 Ladue Road, Suite 201
                    St. Louis, Missouri 63124
                    Telephone:  (314) 862-0200
                    E-mail:     bherman@laduelaw.com
                                  ewells@laduelaw.com

11