UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KEVIN CHESTNUT, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Case No. 4:16-cv-1721 PLC |
| DAWAIN WALLACE, et al, | ) |
| Defendants. | ) |

### ORDER

This matter is before the Court on the motion to dismiss the amended complaint and supporting memorandum filed by Defendants City of St. Louis and Officers Wallace and Burns (collectively, "Movants") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF Nos. 16 & 17). The motion to dismiss is denied.

*I.  Background*

The facts, as alleged in the amended complaint, are as follows:  At approximately 6:00 p.m. on February 6, 2015, Plaintiff was jogging on a trail that loops in and around Tower Grove Park, when he observed a traffic stop conducted by City of St. Louis police officers. (ECF No. 14). According to the amended complaint, Plaintiff, who was wearing "a nylon jogging suit, a bright yellow t-shirt for visibility, a colored sweatband around his head, and gloves" and carrying on his person only a house key, "stopped to observe the traffic stop from a distance of approximately 30 feet, across Arsenal Street, while standing on or near the perimeter jogging

---

[1] Movants and Plaintiff consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). In his amended complaint, Plaintiff substituted Officer Justin Ludwig for the originally named "Officer John Doe." (ECF No. 14). Officer Ludwig waived service on March 2, 2017. (ECF No. 25). He has not yet filed either a response to the amended complaint or a consent to magistrate judge jurisdiction.

1

trail within Tower Grove Park." (Id. at 3-4). Plaintiff stated that he remained silent and did not interfere with the traffic stop. (Id. at 4). While observing the stop, Plaintiff was illuminated by the stopped vehicles' headlamps. (Id.).

Plaintiff alleged that, at approximately 6:05 p.m., Officers Wallace and Burns approached Plaintiff, and Officer Wallace accused Plaintiff of behaving suspiciously. (Id.). Officer Wallace asked Plaintiff for his name and address and frisked him. (Id.). After Plaintiff identified himself, Officer Wallace ordered Officers Burns and Ludwig to handcuff Plaintiff, and "Defendant Police Officers handcuffed [Plaintiff]." (Id.). Plaintiff remained in handcuffs until approximately 6:25 p.m., when a sergeant appeared on the scene and ordered Plaintiff released. (Id.).

Plaintiff stated that he filed a complaint with the Internal Affairs Division (IAD) of the St. Louis Metropolitan Police Department on February 20, 2015. (Id. at 5). On October 27, 2015, IAD Commander Lt. Adam Koeln telephoned Plaintiff and advised him that, "pursuant to St. Louis Police policy, people who merely stop to watch police action are engaging in suspicious behavior that subjects them to stop, frisk, and arrest." (Id.). In a letter dated March 1, 2016, Lt. Koeln informed Plaintiff that "an allegation of misconduct could not be sustained against any of the officers involved in this incident." (Id. at 6). Lt. Koeln sent Plaintiff a second letter on March 15, 2016 advising Plaintiff that IAD had completed and closed the investigation. (Id.).

Plaintiff filed a two-count petition under 42 U.S.C. § 1983 alleging violations of his Fourth Amendment rights. In Count I, Plaintiff alleged unlawful detention and arrest against Officers Wallace and Burns in their individual capacities. (ECF No. 14 at 7-8). In Count II, which Plaintiff brought against the City of St. Louis only, he claimed "unlawful detention and arrest caused by unconstitutional municipal policy." (Id. at 9-10). In both counts, Plaintiff

requested damages "for psychological and emotional injury, humiliation, embarrassment, costs and expenses, and for attorney's fees as provided by 42 U.S.C. § 1988."[2] (Id. at 8, 10).

Movants filed a motion to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff failed to allege sufficient facts to support a plausible claim under 42 U.S.C. § 1983. (ECF No. 16). Officers Wallace and Burns further claim that they are protected by qualified immunity. (Id.).

## II. Legal standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor. Id.

## III. Discussion

A. *Count I – Section 1983 claim against Officers Wallace and Burns*

---

[2] Plaintiff attached as exhibits to his first amended complaint two Google Street View maps, upon which he marked the alleged location of the traffic stop and his position across the street (ECF No. 14-1), and Lt. Koeln's letters of March 1, 2016 and March 15, 2016. (ECF Nos. 14-2 & 14-3). Generally, if the parties present, and the Court considers, matters outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the Court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. Neubauer v. FedEx Corp., No. 15-3694, 2017 WL 655434 at *1 (8th Cir. Feb. 17, 2017) (citing Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003)).

3

Officers Wallace and Burns move to dismiss Plaintiff's Section 1983 claims against them in their individual capacities on the basis of qualified immunity. More specifically, they argue that Plaintiff did not establish a violation of a constitutional right because "the stop alleged by Plaintiff meets the Fourth Amendment standard of reasonableness as a matter of law." (ECF No. 17 at 4). In response, Plaintiff asserts that Officers Wallace and Burns are not entitled to qualified immunity because a "suspicionless stop, frisk, and arrest for watching police conduct a traffic stop violates well-established Fourth Amendment rights."[3] (ECF No. 18 at 6).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Requiring the alleged violation of law to be 'clearly established' balances . . . the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Wood v. Moss, 134 S. Ct. 2056, 2067 (2014) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). To prevail on a Rule 12(b)(6) motion to dismiss on the basis of qualified immunity, defendants "must show that they are entitled to qualified immunity on the face of the complaint." Dadd v. Anoka Cty., 827 F.3d 749, 754 (8th Cir. 2016) (quoting Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005)).

Plaintiff alleged violations of the Fourth Amendment's prohibition on "unreasonable searches and seizures." U.S. Const. amend. IV. "Under Terry v. Ohio, 392 U.S. 1 (1968), 'an

---

[3] While Plaintiff characterizes the incident as an arrest, Officers Wallace and Burns assert that it was an investigatory, or Terry, stop. The Court need not resolve this matter for purposes of this motion to dismiss.

officer may consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot.'" El-Ghazzawy v. Berthiaume, 636 F.3d 452, 456 (8th Cir. 2011) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." United States v. Maltais, 403 F.3d 550, 554 (8th Cir. 2005) (citations omitted).

The United States Supreme Court has recognized that "an officer's right to conduct an investigatory stop inherently includes the right to use some degree of physical force or threat to effect the stop." El-Ghazzawy, 636 F.3d at 457 (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). "The use of handcuffs is the use of force, and such force must be objectively reasonable under the circumstances." Id. (quoting Muehler v. Mena, 544 U.S. 93, 103 (2005) (Kennedy, J., concurring)). Consequently, "the Fourth Amendment requires some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose, evaluated on the facts of each case." Id. (quoting Bennett v. City of Eastpointe, 410 F.3d 810, 836 (6th Cir. 2005)). See also United States v. Martinez, 462 F.3d 903, 907 (8th Cir. 2006) (police officers may use handcuffs as a reasonable precaution to protect the officers' safety and maintain the status quo during a Terry stop).

Plaintiff asserts that Officers Burns and Wallace are not entitled to qualified immunity because he alleged sufficient facts to state a claim that the officers stopped, frisked, and handcuffed him without a reasonable articulable suspicion. In the amended complaint, Plaintiff alleged that he was jogging along the Tower Grove Park trail when he observed the traffic stop. Plaintiff, who was wearing exercise gear and carrying only a house key, paused on or near the

5

jogging trail and across the street from the traffic stop, and silently observed the police action. Plaintiff was illuminated by the stopped vehicles' headlamps, and he did not interfere with the police officers' activities. When Officers Wallace and Burns approached Plaintiff and asked his name and address, Plaintiff provided the requested information.

"[I]t is well established that if suspects are cooperative and officers have no objective concerns for safety, the officers may not use intrusive tactics such as handcuffing absent any extraordinary circumstances." El-Ghazzawy, 636 F.3d at 460. Here, Plaintiff stated a plausible claim that a constitutional violation occurred as a result of Officers Wallace and Burns stopping, frisking, and handcuffing him without reasonable suspicion.

In addition, viewed in the light most favorable to Plaintiff and based on case law existing at the time of the incident, the facts alleged in the amended complaint support a plausible claim that a reasonable officer would have understood that the actions taken by Officers Wallace and Burns were unlawful. See, e.g., El-Ghazzawy, 636 F.3d at 457 (police officers violated the plaintiff's constitutional rights when they handcuffed and frisked the plaintiff where there was no reason to believe that the plaintiff was armed and the crime he was suspected of committing was not a dangerous one). See also Walker v. City of Pine Bluff, 414 F.3d 989, 993 (8th Cir. 2005) (police officers lacked probable cause to arrest plaintiff for obstruction of governmental operations when he watched police activity from a distance of forty to fifty feet, spoke only when spoken to, and complied with the officers' request for identification).

Construing all facts in favor of Plaintiff, the Court finds that Plaintiff sufficiently alleged that the search and seizure were unreasonable, and thus stated a claim under Section 1983. Accordingly, the motion to dismiss the individual capacity Section 1983 claims against Officers Wallace and Burns on the basis of qualified immunity is denied.

*B. Count II – Section 1983 Claim Against the City of St. Louis*

Defendant City of St. Louis claims that Plaintiff failed to allege sufficient facts to state a claim against the City under Section 1983 because the facts alleged did not establish a constitutional violation, let alone a policy or practice that caused a such a violation. (ECF No. 17 at 7). Plaintiff counters that he pleaded "concrete and particularized facts from which it follows" that either the City or its police department "had a policy that authorized St. Louis Police to stop, frisk, and arrest him for merely observing police activity." (ECF No. 18 at 9).

A municipality may not be liable under Section 1983 unless a constitutional violation was committed pursuant to an official custom, policy, or practice. Johnson v. Blaukat, 453 F.3d 1108, 1114 (8th Cir. 2006) (citing Monell v. Dep't of Soc. Servs. Of the City of New York, 436 U.S. 658, 690-91 (1978)). "There must be a causal connection between the municipal policy or custom and the alleged constitutional deprivation in order to state a valid claim under § 1983." Ulrich v. Pope County, 715 F.3d 1054, 1061 (8th Cir. 2013). In other words, the custom, policy, or practice must have been the "moving force" behind the violation. Luckert v. Dodge Cnty, 684 F.3d 808, 820 (8th Cir. 2012).

Here, Plaintiff alleged that, after reporting the search and seizure to IAD, Lt. Koelm informed him by telephone that "pursuant to St. Louis Police policy, people who merely stop to watch police action are engaging in suspicious behavior that subjects them to stop, frisk, and arrest." (ECF No. 14 at 5). Plaintiff further stated that IAD closed his complaint in March 2016 after concluding that Officers Wallace, Burns, and Ludwig "acted in accordance with the St. Louis policy in detaining and arresting [Plaintiff] for watching police in the course of their duties[.]" (ECF No. 14 at 6).

Because Plaintiff alleged in the amended complaint that either the City or its police

7

department had a policy or practice of detaining, without reasonable suspicion of criminal activity, any individuals who watched police activity, and this policy or custom caused him to suffer constitutional violations, Plaintiff's allegations are sufficient to withstand a motion to dismiss. Therefore, the Movants' motion to dismiss Plaintiff's Section 1983 claim against the City is denied.

## IV. *Conclusion*

For the reasons stated herein, the Court denies Movants' motion to dismiss Plaintiff's Section 1983 claims against the City and Officers Wallace and Burns in their individual capacities.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Movants' motion to dismiss Plaintiff's first amended complaint (ECF No. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that Movants' motion to dismiss Plaintiff's original complaint (ECF No. 9) is **DENIED** without prejudice as moot.

                                                                              /s/ Patricia L. Cohen
                                                                              PATRICIA L. COHEN
                                                                              UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of March, 2017