EXHIBIT
D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEVIN CHESTNUT,              )
                             )
            Plaintiff,       )
                             )
vs.                          )   No. 4:16-CV-01721-PLC
                             )
OFFICER WALLACE, et al,      )
                             )
            Defendants.      )


Deposition of CITY OF ST. LOUIS, MISSOURI,
by LIEUTENANT PAUL LAUER as Corporate Designee,
and LIEUTENANT PAUL LAUER, Individually,
taken on behalf of the Plaintiff
May 1, 2018


INDEX

| Questions By: | Page: |
|---|---|
| MR. HERMAN | 5 |


Reporter:  Sara Alice Masuga, CSR, CCR
IL CSR No. 084-002993  MO CCR No. 1012


MASUGA COURT REPORTING
2033 HIAWATHA AVENUE
ST. LOUIS, MO  63143-1215

## Page 2

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF MISSOURI
 2                       EASTERN DIVISION
 3
     KEVIN CHESTNUT,           )
 4                             )
                  Plaintiff,   )
 5                             )
     vs.                       )   No. 4:16-CV-01721-PLC
 6                             )
     OFFICER WALLACE, et al,   )
 7                             )
                  Defendants.  )
 8
 9   APPEARANCES:
10
11   For Plaintiff:
12
            Schwartz, Herman & Davidson
13          By Robert Herman, Esq.
            and Mark Timmerman, Esq.
14          8820 Ladue Road
            Suite 201
15          St. Louis, MO  63124
16
17   For Defendants:
18
            City Counselor's Office
19          By Erin K. McGowan, Esq.
            1200 Market Street
20          City Hall Room 314
            St. Louis, MO  63103
21
22
23
24
25
```

## Page 4

```
 1                    EXHIBIT INDEX
         Exhibit:                      Page:
 2
 3   Plaintiff's Exhibit 100..............................6
     (First Revised Notice of Deposition)
 4
 5   Plaintiff's Exhibit 101............................22
     ("Handcuffed By Police During My Run Around Park" --
 6    Account by Kevin Chestnut")
 7
     Plaintiff's Exhibit 102............................35
 8   (7 Metropolitan Police Department - City of St. Louis,
      MO Intra-Department Reports and Correspondence Sheets)
 9
10   Plaintiff's Exhibit 103............................41
     (Metropolitan Police Department - City of St. Louis
11    Administrative Reports Transmittal Sheet dated
      7/10/15)
12
13   (Exhibits attached.)
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1        IT IS STIPULATED AND AGREED by and between
 2   counsel for Plaintiff and counsel for Defendants that the
 3   deposition of CITY OF. ST. LOUIS, MISSOURI, by LIEUTENANT
 4   PAUL LAUER as Corporate Designee, and LIEUTENANT PAUL
 5   LAUER, Individually, may be taken pursuant to the Federal
 6   Rules of Civil Procedure, by and on behalf of the
 7   Plaintiff on May 1, 2018, at the offices of the City
 8   Counselor's Office, 1200 Market Street, Room 314 City
 9   Hall, St. Louis, Missouri, before me, Sara Alice Masuga,
10   Certified Court Reporter and Certified Shorthand
11   Reporter; that the issuance of notice is waived and that
12   this deposition may be taken with the same force and
13   effect as if all Federal Rules had been complied with.
14        IT IS FURTHER STIPULATED AND AGREED that the
15   signature of the deponent is waived.
16
17
18
19
20
21
22
23
24
25
```

## Page 5

```
 1        (Prior to commencement of the deposition,
 2         Plaintiff's Exhibit No. 100 was marked for
 3         identification.)
 4
 5        CITY OF. ST. LOUIS, MISSOURI, by LIEUTENANT PAUL
 6   LAUER as Corporate Designee produced, sworn, and examined
 7   as a witness on behalf of the Plaintiff testified as
 8   follows commencing at 9:02 a.m.:
 9
10            DIRECT EXAMINATION
11   BY MR. HERMAN:
12
13        Q.  Morning, Officer.  My name is Bob Herman.  I
14   introduced myself earlier.  I'm going to be taking your
15   deposition this morning and I want to ask, have you ever
16   had your deposition taken before?
17        A.  Yes.
18        Q.  So, you understand that deposition consists of
19   me asking you a series of questions and then both the
20   questions and your answers to those questions will be
21   taken down in written form by the court reporter here and
22   may be used at the trial of this matter that's referenced
23   in the -- in the Subpoena, Notice of Deposition.  Because
24   the point of having a deposition is to make a readable
25   record, I'm going to ask that at any time I say something
```

Page 6

1 that I've failed to make myself completely clear to you,
2 you stop me and ask me to explain myself; is that all
3 right?
4     A.  Yes.
5     Q.  Also that if I ask you a question, you limit
6 your answers to out loud answers, so no shaking your
7 head, no grunting, no "um-hmm" or "uh-huh.  "Yes" and
8 "nos" are better for the court reporter since she can't
9 get down "um-hmm" or head shakes, okay?
10    A.  I understand, yes.
11    Q.  All right, very good.  Would you state your
12 full name for the record, please?
13    A.  Paul Lauer.
14    Q.  And by whom are you employed and in what
15 capacity?
16    A.  By the St. Louis Police Department as a police
17 lieutenant.
18    Q.  All right.  And I am going to hand you what
19 has been previously marked as Plaintiff's Exhibit Number
20 100.
21    A.  Okay.
22    Q.  Have you seen that document before?
23    A.  Yes.
24    Q.  Now, I understand that you have been asked to
25 come here and testify by the City as -- partly as their

Page 7

1 corporate representative, representative of the City of
2 St. Louis; is that correct?
3     A.  Yes, that's what I was told.
4     MR. HERMAN:  So, Erin, I'd like to, if you
5 wouldn't mind acknowledging on the record that he's
6 being produced as a corporate representative of the
7 Defendant City of St. Louis; is that correct?
8     MS. MCGOWAN:  That's correct on --
9     MR. HERMAN:  And --
10    MS. MCGOWAN:  -- topics 1 through 6, topic 10,
11 and I think the lieutenant can also speak to topic 7
12 a little bit.
13    MR. HERMAN:  All right.
14    (Questions by Mr. Herman)
15    Q.  And I also understand that you do have some
16 personal knowledge of what occurred here in that you
17 investigated the incident that is the underlying basis
18 for this lawsuit; is that correct?
19    A.  That's correct.
20    Q.  So, you're going to be doing double duty
21 today.
22    A.  That's what it sounds like.
23    Q.  You should put in for double pay today.  So,
24 you're going to be asked for your personal knowledge and
25 then you're going to be asked about your -- about the

Page 8

1 policies of the City or the City Police Department as
2 consistent with the paragraphs that the attorney has said
3 that you're here to testify about; correct?
4     A.  Yes.
5     Q.  So, I know what your attorney said, but I want
6 to ask you directly, are there any issues in the
7 Corporate Representative Deposition Notice that you are
8 not prepared to testify about?
9     A.  No.
10    MS. MCGOWAN:  Bob, do you mean just with
11 regard to topic 1 through 6, 7, and 10 or?
12    MR. HERMAN:  So, 1 through 6, 7, and 10.
13    (Questions by Mr. Herman)
14    Q.  So, do I take it correctly that you are not
15 prepared to testify as to 8 and 9, Paragraphs 8 and 9?
16    A.  Correct, I was told about 1 through 7 and 10.
17    Q.  And 10.  And what about 11?
18    MS. MCGOWAN:  No, he's not been designated on
19 topic 11.
20    MR. HERMAN:  Okay.  Who was that who's been
21 designated?
22    MS. MCGOWAN:  That is Sergeant Don Re.
23    MR. HERMAN:  Okay.  All right.
24    (Questions by Mr. Herman)
25    Q.  I'm sorry, I know you told me, but remind me

Page 9

1 what is your position, your official position?
2     A.  I'm a police lieutenant and I'm a Commander of
3 the Traffic Safety Division.
4     Q.  Okay.  Do you have any relationship to
5 Internal Affairs investigations?
6     A.  Any relationship as --
7     Q.  I mean, do you -- as part of your job or do
8 you also do as a part of your daily routine Internal
9 Affairs investigations?
10    A.  As a commander of a unit, I do conduct some
11 Internal Affairs investigations.
12    Q.  Okay, did you conduct an Internal Affairs
13 investigation involving the incidents that are set forth
14 in the Complaint of Mr. Chestnut?
15    A.  I did.
16    Q.  All right.  Why don't we just cut straight to
17 the issues here and tell me what it is you understood
18 took place with respect to an interaction that occurred
19 on or about February 6 of 2015 between Mr. Chestnut and
20 various officers of the City of St. Louis.
21    MS. MCGOWAN:  Bob, I'm going to object.
22 That's just a little vague.
23    MR. HERMAN:  I'm asking for what his knowledge
24 is.
25    (Questions by Mr. Herman)

3 (Pages 6 to 9)

Page 10

1    Q.   What's your knowledge about what happened?
2    A.   My knowledge is that --
3    Q.   So, let's take it slowly so she can get it
4  down and I may interrupt you from point to point, but.
5    A.   Okay.
6    Q.   Well, I'll tell you what:  Why don't you just
7  tell me and then I'll go back through it, is that all
8  right?  Is that okay?
9    A.   Okay.
10   Q.   Just give me your narrative.
11   A.   My recollection is that Mr. Chestnut was
12 stopped by the police for I believe the officer thought
13 he was maybe following her around on traffic stops and
14 she found that to be suspicious.  She contacted some
15 other officers to respond and assist her and they stopped
16 Mr. Chestnut, I believe had him handcuffed, asked him
17 some questions and was later released.  He did not feel
18 the interaction was -- I guess that he was treated
19 uncivilly by the police and he filed a Complaint about
20 it.
21   Q.   Okay.  Anything else?
22   A.   Once -- Once the Complaint was filed, he did
23 that through Internal Affairs Office --
24   Q.   Uh-huh.
25   A.   -- and eventually, that Complaint was handed

Page 11

1  over to me to investigate.
2    Q.   Okay.  Let's work backwards.  What's your --
3  What's the first time you had any knowledge about what
4  occurred on that date?
5    A.   I got sent the Complaint in an envelope to my
6  office to notify me that a Complaint had been made
7  against one of my officers.
8    Q.   And when you -- when you say "the Complaint,"
9  you're talking about what?
10   A.   Was an allegation against police officers for
11 uncivil treatment.
12   Q.   Filed by Mr. Chestnut; is that correct?
13   A.   That's correct.
14   Q.   All right.  And that's the first time you had
15 any knowledge of Mr. Chestnut or anything that happened
16 to him; is that correct?
17   A.   Correct.
18   Q.   Why did this Complaint get forwarded to you?
19   A.   Well, when Internal Affairs gets a complaint,
20 depending on the circumstances, either they will
21 investigate it or they can hand it down to the commander
22 of a unit of which the officers are assigned to that are
23 the subject of the investigation.
24   Q.   Okay.  So, somebody first made an -- first
25 received the Complaint; is that correct?

Page 12

1    A.   Correct.
2    Q.   Can you identify who that somebody is?
3    A.   From my recollection and according to the
4  documents, Sergeant Ed Moran from Internal Affairs.
5    Q.   All right.  And why would it -- why is it that
6  he would have been the first one to look at the
7  Complaint?
8    A.   He is assigned to Internal Affairs, so if I
9  remember correctly, the Complaint, I believe, came
10 through over the internet, like they --
11   Q.   An e-mail?
12   A.   I believe it's like an e-mail type thing.
13   Q.   Okay.
14   A.   And so --
15   Q.   Is there a -- Is there a website from the
16 St. Louis Police Department where people can make
17 complaints or --
18   A.   Yes.
19   Q.   All right.  And do you know what that website
20 is called?
21   A.   It's our SLMPD.org, our main website that the
22 public can access.
23   Q.   All right.  And is there a specific portion of
24 that website that allows somebody to make a complaint
25 over the internet?

Page 13

1    A.   Yes.
2    Q.   And is there a name for that form or that part
3  of the?
4    A.   I don't recall a specific name.  Citizen
5  complaint possibly.
6    Q.   All right.  And, so, what happens from that
7  point?  Somebody fills out this form on the internet
8  saying I have a complaint about something, what's the
9  next thing that happens?
10   A.   They have options where they could mail it in,
11 I believe they can e-mail it, or they could hand deliver
12 it to headquarters.
13   Q.   All right.  Is it your understanding in this
14 case that it was e-mailed in through that form?
15   A.   I believe so, yes.
16   Q.   All right.  What's the next thing that happens
17 in that process?
18   A.   Then the -- one of the Internal Affairs
19 investigators would get that, I guess, Sergeant Moran
20 would get that and he would contact the citizen making
21 the complaint to get more information if they need to or
22 to verify that they did, indeed, file a complaint and
23 probably would want them to, you know, maybe give more
24 information about it or sign the complaint.
25   Q.   Uh-huh.  So, in this particular case, in the

4 (Pages 10 to 13)

Page 14

1  case of Mr. Chestnut, what happened?
2      A.  If I recall, they had Mr. Chestnut come down
3  for further information and to -- to sign the Complaint.
4      Q.  And who did he meet with; do you know?
5      A.  I --
6      Q.  When I say "he," Mr. Chestnut.  Who did --
7      A.  Right.
8      Q.  -- Mr. Chestnut meet with?
9      A.  I believe Sergeant Moran.
10     Q.  All right.  Were you present at the meeting
11  between Moran and Chestnut?
12     A.  I was not.
13     Q.  Did Moran tell you that there was a meeting?
14     A.  I did not -- He did not tell me personally,
15  no.
16     Q.  Did he inform you in some other way that there
17  had been a meeting?
18     A.  It was included in some documents that were
19  sent to me as part of my investigation so I could begin
20  it.
21     Q.  Uh-huh.  So, why did Moran give it to you
22  then?
23     A.  Well, there's some -- some investigations at
24  however it's decided up in Internal Affairs that Internal
25  Affairs investigators will -- will handle.  And I know,

Page 15

1  you know, their caseload can get burdensome.
2      Q.  Uh-huh.
3      A.  So, some -- some complaints get sent to the
4  commanders of a unit to investigate.
5      Q.  All right.  And are you the commander of the
6  unit that was involved in this incident?
7      A.  Yes.
8      Q.  And to your knowledge, who did -- who did this
9  involve as a part of your unit, which officers were
10  involved?
11     A.  There was Officer Wallace, Porter or Burns I
12  guess at the time, Ludwig.
13     Q.  Burns got married and became Porter; is that
14  right?  Or was it the other --
15     A.  I think she got divorced and became --
16     Q.  Oh, okay.
17     A.  -- Porter.
18     Q.  The other way round?
19     A.  Correct.
20     Q.  All right.  Ludwig?
21     A.  Right, those -- I think those were names
22  specifically mentioned --
23     Q.  All right.
24     A.  -- in the Complaint.
25     Q.  Let's talk -- take a step back and let me ask

Page 16

1  you, how many of these kind of investigations have you
2  done before?
3      A.  Probably maybe ten.  Ten to 12.
4      Q.  And what do you understand is your particular
5  charge?  What are you charged with doing when you're
6  handed an investigation like this?
7      A.  Basically, I'm -- find out statements from the
8  Complainant, find out statements from the officers that
9  are involved, and then determine if there's any other
10  evidence that, you know, if they video of the incident or
11  other witnesses that, you know, outside witnesses that
12  can give any information towards it, any type of other
13  reports that might have been prepared.
14     Q.  Do you limit your investigation to -- strictly
15  to the allegations made in the written complaint by the
16  complainant or do you look at generally what happened to
17  see if anything was done outside of the policies of the
18  City of St. Louis?
19     A.  I initially look at what the complaint is from
20  the citizen --
21     Q.  Uh-huh.
22     A.  -- and then if during the investigation I
23  determine that other violations may have occurred, then
24  those can be added into the complaint.
25     Q.  All right.

Page 17

1      (At this point, an off-the-record discussion
2      was had.)
3      Q.  When you examine an incident to determine
4  whether something was done properly or improperly, what
5  are the ground rules, where is your -- where do you get
6  the information as to what's required and what's not
7  required or what's -- what's done properly, what's not
8  done properly?
9      A.  As far as how an investigation should occur?
10     Q.  No, as far as the -- whether or not the
11  conduct was appropriate or not.
12     A.  Okay, as far as the allegation of uncivil
13  treatment?
14     Q.  As far as any allegation that you might be
15  investigating.  Are you --
16     A.  Most of the information comes from what the
17  complainant reports and what the officers report in their
18  Memos and then, again, if there's any outside witnesses
19  that may be involved and any kind of evidence, like a
20  video or something that would prove it one way or the
21  other.
22     Q.  Okay.  I understand I probably didn't ask this
23  question precisely enough.  Let me give it another try.
24  How do you determine ultimately, after you've collected
25  all the facts, how do you determine if the conduct was

Page 18

1 appropriate or not?
2    A.  Basically, the -- what the allegation is, the
3 definition from the allegation, if the -- the evidence
4 meets the requirement to show that that violation did
5 occur.  So, if --
6    Q.  How do we tell if it's a violation or not?
7    A.  Well, based upon what the Complainant's is.  I
8 mean, we call it an allegation.
9    Q.  I understand, but then once you -- once you've
10 identified the allegation and you've done your -- you've
11 done your investigation, then where do you go to look to
12 see if whatever was done was appropriate or not?
13       MS. MCGOWAN:  I'm going to object on the basis
14 that this is a little vague since we're not clear on
15 what particular allegation we're talking about.
16       MR. HERMAN:  All right, I could ask that
17 again.
18       (Questions by Mr. Herman)
19    Q.  Let's -- Let's -- You received Mr. Chestnut's
20 allegations; correct?
21    A.  Yes.
22    Q.  You investigated by accumulating evidence?
23    A.  Yes.
24    Q.  By talking to witnesses, right?
25    A.  Correct.

Page 19

1    Q.  And by looking at what -- what's been filed,
2 what police reports were filed and the dispatch reports;
3 correct?
4    A.  Correct.
5    Q.  All right.  After you collected all that
6 information and you went back to your office to try and
7 think about what -- what -- what -- whether what was done
8 violated policy or not, where do you go to look to see
9 what the policy is?
10    A.  So, how did I come to my determination?
11    Q.  Right.
12    A.  There's -- In a special order, there's
13 different determinations you can make about an
14 allegation:  Sustained that there was enough evidence to
15 support the allegation; not sustained, that saying that
16 there wasn't enough evidence to support, you know, that
17 it did occur or did not occur; and then there's
18 unfounded, that there's just not any evidence to show
19 that these -- that this even occurred, that a violation
20 even occurred; and then there's withdrawn, which would
21 mean that the citizen --
22    Q.  Right.
23    A.  -- came in and said I'd like to withdraw my
24 complaint and it's over with.
25    Q.  I understand that.  I'm still not since I

Page 20

1 don't speak cop talk and I'm trying to find out what
2 words I should be using from you.  If you've -- you able
3 to -- If you are able to establish that certain things
4 occurred and the question is whether those certain things
5 were appropriate or not, whether those actions that you
6 discovered took place and you -- you need to know whether
7 those actions that you know occurred were appropriate or
8 not appropriate, how do you determine appropriate versus
9 not appropriate?
10    A.  That's basically after going through my
11 investigation, having all the facts, then I would, you
12 know, make that determination through the evidence I
13 found, what the statements were, what any other evidence
14 was as to whether or not there was enough evidence to
15 support a sustained complaint or not sustained.
16    Q.  I understand, but based on what rules?
17    A.  On the rules from the special orders that --
18    Q.  Okay.
19    A.  -- define.
20    Q.  So, is it fair to say that the special orders
21 are the policy manual?  Is that the -- I mean, in private
22 industry, you'd say there's a policy manual.
23    A.  Right, that's our set of rules and procedures.
24    Q.  Okay.  And the -- the St. Louis Police
25 Department has a manual or has a collection of these

Page 21

1 special orders that -- that -- I'm so distracted by that.
2 Sorry -- that determine what is required and what is
3 prohibited; is that correct?
4    A.  Correct.
5    Q.  What actions are required and what actions are
6 prohibited, right?
7    A.  Correct.
8    Q.  Okay.  And, so, as we go along, I may be
9 asking you, well, which policy, which special order does
10 that come from when -- when you tell me you made a
11 determination about some particular action --
12    A.  Okay.
13    Q.  -- okay?  Is there unofficial policy?
14    A.  Unofficial, no.
15    Q.  Everything goes back to the book?
16    A.  Right.
17    Q.  When I say "back to the book," I mean back to
18 your special orders.
19    A.  Yes.
20    Q.  All right.  When you say that Mr. Chestnut was
21 complaining about uncivil behavior --
22       MS. MCGOWAN:  I'm sorry.  Sara, can you hear
23 okay?
24       (At this point, there was a pause in the
25       proceedings.)

6 (Pages 18 to 21)

MASUGA COURT REPORTING
314/781-1447

Page 22

1    (At this point, Plaintiff's Exhibit No. 101
2    was marked for identification.)
3    Q.   Officer, I've handed you Exhibit 101 and ask
4    if you recognize that document.
5    A.   Yes, it appears to be the -- the letter that
6    Mr. Chestnut had that accompanied his Complaint.
7    MR. HERMAN:  All right, Erin, I understand
8    that we have an agreement that these documents which
9    we got from you in production are -- you're not
10    going to have an authenticity objection; you're
11    going to stipulate that these are authentic and true
12    and accurate copies of documents that you have in
13    your files?
14    MS. MCGOWAN:  That's correct, yes.
15    MR. HERMAN:  And by the way, I should have
16    asked you if you agree that this officer is speaking
17    on behalf of the City with respect to the named
18    paragraphs.  Is that correct we have that agreement?
19    MS. MCGOWAN:  With the named paragraphs, I'm
20    sorry?
21    MR. HERMAN:  Name -- The paragraphs named
22    that --
23    MS. MCGOWAN:  Oh, oh.
24    MR. HERMAN:  -- specified earlier on?
25    MS. MCGOWAN:  The topics, yes.

Page 23

1    MR. HERMAN:  Right.
2    MS. MCGOWAN:  Yes.
3    MR. HERMAN:  And that's correct?
4    MS. MCGOWAN:  Yes, 1 through 6 -- or 1 through
5    7 and 10.
6    MR. HERMAN:  Very good.
7    (Questions by Mr. Herman)
8    Q.   Sir, Exhibit 101 is something that you -- was
9    given to you; is that correct?
10    A.   Yes.
11    Q.   As a part of this investigation?
12    A.   Correct.
13    Q.   And do you remember who you got that from?
14    A.   I got it from Internal Affairs.  I don't
15    know -- I believe their secretary probably sent it down
16    to me.
17    Q.   Now, where in -- in this Complaint does it
18    specify that the Complaint is about the officers acting
19    uncivilly toward Mr. Chestnut or is that a label that was
20    put on this Complaint by the police department?
21    A.   That was, I believe, placed on there by the
22    police department based upon the contents of the letter,
23    what he described --
24    Q.   Okay.
25    A.   -- would be uncivil treatment.

Page 24

1    Q.   All right.  And you agree, don't you, that
2    Mr. Chestnut was complaining about his detention?
3    A.   That's what I --
4    MS. MCGOWAN:  Objection, legal conclusion.
5    But go ahead.
6    A.   That's what -- That's what I got out -- out of
7    reading it, yes.
8    Q.   Okay.  And, so, the circumstance -- is it fair
9    to say that the circumstances leading up to the detention
10    and the reasons for the detention are part of your --
11    would be part of your investigation?
12    MS. MCGOWAN:  Same objection.  But you can
13    answer.
14    A.   Yes.
15    Q.   And is it fair to say that Mr. -- I'm sorry --
16    Mr. Chestnut complains that he was handcuffed; correct?
17    A.   Correct.
18    Q.   Is that -- Would that be part of your
19    investigation, as well, as to why -- the reasons why he
20    was handcuffed?
21    A.   Yes.
22    Q.   And Mr. Chestnut complains in this Complaint
23    that he was questioned about matters that he didn't feel
24    like he should have to disclose; is that correct?
25    A.   That was part of his Complaint, yes.

Page 25

1    Q.   And that would be part of your investigation,
2    as well?
3    A.   Correct.
4    Q.   Does uncivil conduct encompass complaints
5    about being improperly arrested or detained?
6    A.   In this circumstance?
7    Q.   In this circumstance.
8    A.   Yes.
9    Q.   So, did you make conclusions as a part of your
10    investigation as to whether the stop of Mr. Chestnut was
11    justified?
12    A.   That was part of what I looked at, yes.
13    Q.   All right.  And did you make conclusions as to
14    whether or not the seizure of Mr. Chestnut was justified?
15    MS. MCGOWAN:  Objection, legal conclusion.
16    A.   Are you talking about the detention?
17    Q.   The detention.
18    A.   Yes.
19    Q.   And did you make conclusions as to whether or
20    not placing handcuffs on Mr. Chestnut were justified as a
21    part of your investigation?
22    A.   That was looked at, also, yes.
23    Q.   All right.  And lastly, did you make
24    conclusions as to whether the information that
25    Mr. Chestnut was asked to provide was within the policy

7 (Pages 22 to 25)

Page 26

1 of the City of St. Louis?
2    A.  Within the policy of the City of St. Louis?
3    Q.  Right.  The policy of the police department --
4    A.  Police department?
5    Q.  -- of the City of St. Louis?
6    A.  Yes.
7    Q.  All right.  So, let me make sure I got all
8 these right and that's I got the -- Sorry, I'm talking to
9 myself.
10      When a citizen is approached by a police
11 officer and ordered to stop, what do you call that action
12 in police lingo?  You call it a seizure?  You call it
13 arrest?  What do you call it?
14    A.  They're just simply asked to -- to stop.
15    Q.  "Hey, you, come over here, stand right here,"
16 what do you call that?
17    A.  That be would a pedestrian check, I guess, if
18 somebody is on the street and you want to talk to them.
19    Q.  Right.
20    A.  (Nodding.)
21    Q.  And does a citizen in a pedestrian check right
22 to refuse?
23      MS. MCGOWAN:  Objection, calls for legal
24    conclusion.
25    A.  Well, it really depends on the reason why

Page 27

1 you're asking them to stop.
2    Q.  All right.  At what point does the -- does it
3 become a seizure of a person?
4      MS. MCGOWAN:  Same objection.
5    A.  If you're just asking them to stop then and no
6 other reason, then they can continue on their way I would
7 assume since there's no other reason for them stopping.
8    Q.  Okay.  But if it -- if it involves the police
9 officer ordering the person to stop, does that become a
10 seizure?
11      MS. MCGOWAN:  Same objection.
12    A.  Again, it depends on, I mean, did they just
13 witness something or you need to get their information,
14 then that would be, they've -- they've got to identify
15 themselves as a witness and provide information.
16    Q.  Okay.  And, so, does that become -- does that
17 stop become a seizure?
18    A.  I'm --
19      MS. MCGOWAN:  Same objection.  Can I just get
20    a running legal objection --
21      MR. HERMAN:  Sure.
22      MS. MCGOWAN:  -- to this line?  Thank you.
23      MR. HERMAN:  You can run all you want.
24      (Questions by Mr. Herman)
25    Q.  At what point does a stop become a seizure?

Page 28

1    A.  I'm -- I'm -- Are you -- Do you mean arrest
2 or?
3    Q.  Well, we'll get to arrest 'cause there's
4 another --
5    A.  Okay.
6    Q.  -- whole nother term.  We're going to get
7 there in just a minute, but...
8    A.  If you're just asking somebody to stop, then I
9 don't consider that a seizure.
10    Q.  All right.  But if you ask them to stop and
11 the person, the citizen does not have the right to leave,
12 does that become a seizure?
13      MS. MCGOWAN:  Asked and answered.
14    A.  Not -- Not -- I mean, it depends on the
15 circumstances, really.
16    Q.  When you place handcuffs on someone, is that a
17 seizure?
18    A.  That's a detention.
19    Q.  That's a detention?
20    A.  Yes.
21    Q.  All right.  What's the difference between a
22 detention and a seizure?
23    A.  Well, if they've not been told they're under
24 arrest, but if you're placed into handcuffs to insure
25 that -- you know, it depends on the circumstances again.

Page 29

1 If the officer doesn't feel comfortable, doesn't know
2 what they are up to, then they may put them in handcuffs
3 temporarily till they can determine otherwise.
4    Q.  So, on what grounds is a, according to policy
5 of the City of St. Louis Police Department, on what
6 grounds justify placing handcuffs on a citizen?
7      MS. MCGOWAN:  I'm going to object.  I think
8    you're getting into topic 11 and Lieutenant Lauer is
9    not designated on 11.
10      MR. HERMAN:  Let's see if he knows.
11      MS. MCGOWAN:  I'll allow this, but we're --
12    he's not designated on these policies.
13    A.  Okay.  So, if --
14      (Questions by Mr. Herman)
15    Q.  If you know.
16    A.  If somebody has been placed in handcuffs?
17    Q.  Yes.
18    A.  Okay, and did they commit a crime or?
19    Q.  I'm asking you what -- under what grounds is a
20 St. Louis City police officer authorized to place
21 handcuffs on a citizen that they've first seen on the
22 street.  I'm going to eliminate auto stops.  That's a
23 whole different ballpark that's not -- not appropriate or
24 not relevant here, but --
25    A.  Okay.

MASUGA COURT REPORTING
314/781-1447

Page 30

1    Q. -- citizen is seen by police officer on the
2  street in public, and under what grounds could a police
3  officer place handcuffs on that person?
4        MS. MCGOWAN: I'm going to object, vague,
5  calls for speculation, and he's not designated on
6  Number 11. But you can go ahead.
7    A. It depends on what information the officer has
8  at the time to stop the individual and question him or
9  put him in handcuffs.
10   Q. All right. What information would justify
11 plac- -- stopping the individual and placing them in
12 handcuffs?
13   A. Well, if he's -- if he sees them and he was
14 given information that the person matches the description
15 of you, know, that somebody just committed a burglary --
16   Q. Uh-huh.
17   A. -- then they're going to stop them, place them
18 in handcuffs, you know, investigate it further and
19 determine if -- if this was the person, maybe call a
20 witness down to look at them, and then if it's determined
21 he's not, he'll be released.
22   Q. Okay. So, are you telling me that in order to
23 stop somebody on the street to question them, put
24 handcuffs on them, it's the policy of the City that it
25 requires some suspicion of criminal behavior?

Page 31

1        MS. MCGOWAN: I'm objecting. We're getting
2  far -- too far into topic 11. We'll get into this
3  on Thursday.
4        MR. HERMAN: That's fine.
5        MS. MCGOWAN: Thank you.
6        MR. HERMAN: If he knows.
7        MS. MCGOWAN: No, he's not designated on topic
8  11. That's a separate --
9        MR. HERMAN: I mean, he's --
10       MS. MCGOWAN: -- topic.
11       MR. HERMAN: -- he's here in dual capacity, so
12 if he knows, he can answer.
13       MS. MCGOWAN: What does that mean?
14       MR. HERMAN: He's also a witness to some of
15 the events, so your objection is noted.
16       (Questions by Mr. Herman)
17   Q. I'm -- If you know the answer to that
18 question. I'll have her read it back 'cause we've been
19 talking.
20   A. (Nodding.)
21   Q. Give me an answer, okay?
22       MS. MCGOWAN: Hang on. No, I mean, he -- he's
23 designated as a corporate representative on 1
24 through 7. He's not designated on topic 11. We're
25 going to be getting into that on --

Page 32

1        MR. HERMAN: Well, that's --
2        MS. MCGOWAN: -- Thursday with Sergeant Re.
3        MR. HERMAN: -- that's fine. I'm going to ask
4  him, too.
5        MS. MCGOWAN: No, I don't --
6        MR. HERMAN: Are -- Are -- Are you -- -- Are
7  you instructing this witness not to answer?
8        MS. MCGOWAN: Let me do a quick read through 1
9  through 6, but I think we're getting too far afield
10 from what he's been designated on.
11       Yeah, I think, yeah, I am going to instruct him
12 not to answer. I think we're getting into topic 11.
13       MR. HERMAN: Yeah, I know, but --
14       MS. MCGOWAN: We'll put someone up on this
15 topic on Thursday.
16       (Questions by Mr. Herman)
17   Q. Do you know what the policies of the St. Louis
18 City Police Department are with respect to what's
19 required of a police officer, what information the police
20 officer is required to have in order to stop someone on
21 the street and put handcuffs on them?
22   A. Yes.
23   Q. Okay. So, what are they?
24   A. Well, you'd have to have some type of
25 reasonable suspicion --

Page 33

1    Q. Of --
2    A. -- to stop somebody.
3    Q. Reasonable suspicion of what?
4    A. Of a crime that occurred.
5    Q. Okay. And is it fair to say that if you don't
6  have reasonable suspicion that a crime occurred, you
7  don't have authority to stop and put handcuffs on them --
8        MS. MCGOWAN: It calls --
9    Q. -- do you agree with that?
10       MS. MCGOWAN: -- calls for a legal conclusion.
11   A. There's, I mean, several -- there's several
12 different reasons why you might stop somebody.
13   Q. What are they?
14   A. Well, I mean, in this instance, the officer
15 felt he was suspicious and officers that respond to that
16 call dealt with what they believed was a suspicious
17 person.
18   Q. All right. And suspicious --
19   A. They don't know --
20   Q. -- of what?
21   A. Well, when they arrive, they don't -- they
22 don't know exactly, you know, what -- what the reason is,
23 but they've been called to investigate it, so they are --
24 they are going to stop somebody that was identified as
25 possibly being suspicious in behavior.

MASUGA COURT REPORTING
314/781-1447

Page 34

1    Q.  All right.  So, you're telling me that if a
2  person is suspicious, they can be put in handcuffs --
3      MS. MCGOWAN:  Objection.
4    Q.  -- and questioned; is that right?
5      MS. MCGOWAN:  Lacks foundation.  Misstates
6  prior testimony.
7    Q.  If I -- I don't want to put words in your
8  mouth and, so, whatever I say and I ask you if that's
9  true, you tell me yes, that's true or no, it's not true,
10  but if you tell me it's not true, I'm going to ask you
11  some more questions.
12    A.  Right, 'cause this -- in this case, the person
13  could be stopped based upon information that was given to
14  the officers.
15    Q.  All right.  And you said before, I believe,
16  but correct me if I'm wrong, that the information would
17  have to be reasonable suspicion of a crime being
18  committed; is that right?  Did I -- Did I recollect that
19  correctly?
20    A.  Correct.
21    Q.  All right.  What did you do in response to
22  receiving Exhibit 101?
23    A.  When I got this Complaint, I read through the
24  Complaint and determined what it was about, what his
25  statements were, and based upon what his statements were,

Page 35

1  I directed officers that were involved in this incident
2  to ask them ques- -- I asked them questions about the
3  incident for them to answer and get back to me.
4      (At this point, an off-the-record discussion
5      was had.)
6      (At this point, Plaintiff's Exhibit No. 102
7      was marked for identification.)
8    Q.  Sir, I'm going to hand you what's been marked
9  as Plaintiff's Exhibit 102.
10    A.  Okay.
11    Q.  Ask if you recognize that collection of
12  documents.  It's -- I believe it's 14 pages.  I want you
13  to make sure it is, in fact, 14 pages front and back and
14  count it separately.
15    A.  Yes, 14 pages.
16    Q.  All right.  Can you tell us what these
17  documents are?
18    A.  These are --
19    Q.  These documents in 102.  That's one thing
20  that -- I'm sorry.
21      (At this point, an off-the-record discussion
22      was had.)
23    Q.  So, in Exhibit 102 is -- this was not all one
24  document; correct?  They're separate documents?
25    A.  Correct, each one --

Page 36

1    Q.  But they all relate to the same issue?
2    A.  Yes.
3    Q.  Okay, and what do you call this kind of
4  document?
5    A.  These are Memos that were --
6    Q.  Right.
7    A.  -- given to the officers to answer questions
8  about the Complaint from Mr. Chestnut.
9    Q.  All right.  And who generated these -- these
10  Memos?
11    A.  I did.
12    Q.  And can you tell me who they were sent to?
13    A.  One was sent to Officer Bockstruck.
14    Q.  And who is Officer Bockstruck?
15    A.  He's a traffic safety officer.
16    Q.  Was it your understanding he was at the scene?
17    A.  He was mentioned in the Complaint.  However,
18  after further investigation, it was determined he was not
19  at the scene.
20    Q.  All right.  Next issue -- I mean, next person?
21    A.  Officer Burns, who we call Porter now.
22    Q.  All right.  And was she at the scene?
23    A.  Yes.
24    Q.  And what was her role at the scene?
25    A.  She was summoned to the scene by the officer

Page 37

1  that found Mr. Chestnut suspicious and she requested
2  assistance and this officer responded.
3    Q.  Okay.  Next person that you sent a Memo to?
4    A.  Officer Graham.
5    Q.  And what was Graham's position?
6    A.  She's traffic safety officer.
7    Q.  And why was she included in this collection of
8  Memos?
9    A.  She was the officer that was -- requested
10  assistance.
11    Q.  All right.  Next one?
12    A.  Officer Ludwig.
13    Q.  And why Officer Ludwig?
14    A.  He was another officer that was -- responded
15  to the scene.
16    Q.  Next one?
17    A.  Officer Wallace.
18    Q.  And why Officer Wallace?
19    A.  He was another officer that responded to the
20  scene.
21    Q.  All right.  And the next one?
22    A.  Sergeant Lathan.
23    Q.  Why Officer Lathan?
24    A.  He was a supervisor working that was also
25  requested to the scene.

Page 38

1    Q.   And looks like the last one.
2    A.   Officer Dibble.  He's assigned to District 2,
3  but I noticed in the dispatch printout that he -- he was
4  listed on there as responding.
5    Q.   Now, it appears to me that Officer Dibble's
6  Memo was dated June 3 of 2015 and the others were dated
7  May 29, 2015.  Is that accurate?
8    A.   That's accurate.
9    Q.   And can you tell me why that is?
10    A.   He's -- He was not assigned to me.  I later
11  determined, looking at the printout from the dispatch
12  records, that he had also responded, and even though he
13  wasn't assigned to me, it appeared he was there, so I
14  wanted to get his statement, as well.
15    Q.   Now, you told me that -- that the Complaint of
16  Mr. Chestnut covered complaints about his stop, his
17  seizure, handcuffs, and his questioning; is that
18  accurate?
19    A.   Correct.
20    Q.   All right.  So, who generated the questions
21  that are on these Memos?
22    A.   I did.
23    Q.   And are the questions the same for each one of
24  the seven recipients?
25    A.   No, they're a little bit different, depending

Page 39

1  on what was taken from Mr. Chestnut's Complaint.
2    Q.   Let me ask you what questions did you ask
3  regarding the reasons for the stop, the seizure, the
4  handcuffs?  I'll leave it at that for the time being.
5    A.   I believe I asked officers that I was informed
6  had handcuffed him, which would be Officer Wallace and
7  Officer Burns.
8    Q.   All right, let's go to the first one that you
9  mentioned.  The first one in the packet would be Burns,
10  right?
11    A.   Okay, yes.
12    Q.   That's Pages 1, 2, 3, and 4.  So, I made
13  102-3, 102-4; is that okay?
14    A.   Sure.
15    Q.   What questions did you ask Burns about the
16  stop, the seizure, or the handcuffing of Mr. Chestnut?
17    A.   Question Number 2, "Did you place
18  Kevin Chestnut in handcuffs?  If not do you know who put
19  him in handcuffs?"
20    Q.   All right.  Where does it ask what the reasons
21  were for putting Mr. Chestnut in handcuffs?
22    A.   Well, "To your knowledge, was Kevin Chestnut
23  arrested or charged with any crime [...]?"  Number 5.
24  I'm sorry.
25    Q.   Number 5, okay.  Does it ask why Mr. Chestnut

Page 40

1  was stopped to begin with?
2    A.   I don't believe it specifically says why was
3  he stopped.
4    Q.   Does it ask why he was seized?
5    MS. MCGOWAN:  Objection, legal conclusion.
6    A.   Asks -- Asks why if he was placed in
7  handcuffs.
8    Q.   All right, does it did why he was placed in
9  handcuffs?
10    A.   Well, basically, we're asking if he was
11  arrested or charged and if we know who put him in
12  handcuffs.
13    Q.   But it does not ask why?
14    A.   No.
15    Q.   That's correct, right?
16    A.   Correct.
17    Q.   All right.  And you would agree with me,
18  wouldn't you, that if the question -- if the Complaint is
19  about improperly putting Mr. Chestnut in handcuffs to
20  begin with, the reason would be relevant, the reason he
21  was placed in handcuffs would be relevant to
22  Mr. Chestnut's complaints; correct?
23    A.   If -- If -- Yes, if he was treated -- a reason
24  he was treated uncivilly.
25    Q.   All right.  You agree that -- that a reading

Page 41

1  of Mr. Chestnut's Complaint is that he's angry or he's
2  complaining not only that he was -- what was said to him,
3  but the fact that he was handcuffed; correct?
4    A.   Correct.
5    Q.   So, you would agree that the reason for
6  handcuffing him to begin with would be important in your
7  investigation?
8    A.   Correct.
9    Q.   What did you do to determine the reasons that
10  he was placed in handcuffs to begin with?
11    A.   I read the response to my questions.
12    Q.   All right.  Let's start with Burns.  Did
13  each -- Did each of these officers give you a -- give you
14  a separate response?
15    A.   Yes.
16    Q.   Are they required to as a part of their job?
17    A.   Yes.
18    (At this point, an off-the-record discussion
19      was had.)
20    (At this point, Plaintiff's Exhibit No. 103
21      was marked for identification.)
22    Q.   You can take a minute to look that over.  Sir,
23  I've handed you what we've marked as 103.  Can you
24  identify this document for me?
25    A.   Yes, this is Administrative -- A.R.T.S.

11  (Pages 38 to 41)

Page 42

1  Transmittal Sheet.  We call it A.R.T.S.
2       Q.  And what does it consist of?
3       A.  This consists of the -- my investigation that
4  goes through the chain of command based -- I guess
5  documents my findings, my investigation and my findings.
6            (At this point, an off-the-record discussion
7            was had.)
8       Q.  The Exhibit 103, is that -- is it fair to say
9  that this is a summary or your -- your summary of the
10  answers -- the individual answers given to you by each of
11  the officers?
12       A.  Yes, it's a summary.
13       Q.  What did Officer Burns tell you about the
14  reasons for Mr. Chestnut being placed in handcuffs?
15       A.  She said he was already in handcuffs.
16       Q.  He was already in handcuffs when --
17       A.  When she arrived.
18       Q.  -- when she arrived?  Did she give you any --
19  Burns is a female; correct?
20       A.  Yes.
21       Q.  Did Officer Burns give you any indication as
22  to her knowledge of why he was placed in handcuffs to
23  begin with?
24       A.  I -- Not -- It doesn't appear so in my
25  summary.

Page 43

1       Q.  Okay.  Who is the actual officer who placed
2  Mr. Chestnut in handcuffs?
3       A.  I believe it was Officer Wallace.
4       Q.  And Officer Wallace was sent one of these
5  letters by you or Memos by you -- Three, four, five, six,
6  seven, eight -- Make that it's 9 and 10, Pages 9 and 10,
7  102-9, 102-10.  So, I'll ask if you'd look at 102, the
8  ninth page.
9       A.  Okay.
10       Q.  And direct you to question Number 2 --
11       A.  Okay.
12       Q.  -- which said, "Did you place Kevin Chestnut
13  in handcuffs?"  And you got a -- you got a response from
14  Officer Wallace; correct?
15       A.  Correct.
16       Q.  And what does your summary report indicate is
17  the reason that Officer -- Wait.  What does your summary
18  report indicate as to Wallace being the person who
19  handcuffed Chestnut?
20       A.  It indicates his response was he handcuffed
21  Chestnut for his own safety and the safety of Chestnut.
22       Q.  All right.  Were there any other reasons given
23  for the handcuffing besides concern for the safety of his
24  own safety and safety of Chestnut and other officers?
25       A.  And he also said he could not provide any

Page 44

1  identification.
2       Q.  Now I'm looking at Exhibit 103.  Are you
3  referring to the first paragraph on Page 3 of -- first
4  full paragraph on Page 3 of 5?
5       A.  Yes, right under Find-- -- Findings A.
6       Q.  So, the third -- I think it's the third (sic)
7  sentence of that paragraph says, P.O. Wallace stated he
8  did handcuff Chestnut for his own safety and the safety
9  of Chestnut, only after Chestnut could not provide any
10  identification?
11       A.  Correct.
12       Q.  All right.  So, did you ever ask Officer
13  Wallace any other reason for handcuffing Mr. Chestnut?
14       A.  No.
15       Q.  Did you ask Officer Wallace or did Officer
16  Wallace indicate in his response to you or to your Memo
17  why Chestnut was stopped?
18       A.  I believe that he was stopped from receiving a
19  request for assistance from Officer Graham.
20       Q.  And what is the basis for stopping Chestnut,
21  what is Wallace's basis for stopping Chestnut aside from
22  another officer asked for assistance?
23       A.  Right, the officer described on the radio that
24  she believed she was being followed by him or that he was
25  suspicious.

Page 45

1       Q.  All right.  And what is the -- did you ever
2  ask for any information as to why any officer thought
3  that Chestnut was suspicious?
4       A.  I may have asked it from Officer Graham.
5       Q.  The Memo from you directed to Officer Graham
6  is Pages 5 and 6 of Exhibit 102?
7       A.  Uh-huh.
8       Q.  All right.  Where in your Memo that's marked
9  102-5 did you ask for information as to why, what the
10  basis that Mr. Br-- -- Mr. Chestnut was suspicious?
11       A.  After looking at it, I don't see that question
12  that I asked.
13       Q.  All right.  Based on everything you've learned
14  in the investigation, what grounds do you believe exist
15  to suggest that Mr. Chestnut's actions or behavior was
16  suspicious?
17       A.  The information I received was that the
18  officer was stopping cars and she noticed Mr. Chestnut
19  stopping inside the park and watching her.
20       Q.  All right.  Anything else?
21       A.  I guess her -- You know, I mean, I can't
22  testify as to what she was thinking, but, I mean, it
23  sounds -- sounded like, you know, she felt uncomfortable
24  by that and wanted somebody to check him out.
25       Q.  All right.  And you ultimately found that

12  (Pages 42 to 45)

Page 46

1 the -- Mr. Chestnut's complaints, all of Mr. Chestnut's
2 complaints were unfounded; correct?
3     A.  Unfounded, no.  I made it not sustained.
4     Q.  Not sustained?
5     A.  Yes.
6     Q.  Okay, not sustained.  So, is there a
7 difference between not sustained and unfounded?
8     A.  Yes.
9     Q.  What's the difference?
10     A.  Not sustained would be that there wasn't
11 enough evidence to show that it did occur or did not
12 occur, whereas unfounded would be that there was evidence
13 showing that nothing happened; that this event didn't
14 even took place.
15     Q.  All right.  So, let's -- let's -- I'll use
16 your term then.  It was not sustained; is that correct?
17     A.  That was my recommendation.
18     Q.  Your recommendation not sustained and that
19 means that what?
20     A.  That there was not enough evidence one way
21 or -- or the other to -- to find -- you know, sustained
22 would be, yeah, this -- this did happen and the officers
23 were in the wrong.
24     Q.  All right.  In order to make that conclusion,
25 you would have had to come to a conclusion that the

Page 47

1 reasons for the stop, the seizure, and the handcuffs were
2 authorized by St. Louis City Police Department policy;
3 correct?
4     A.  I came to a recommendation that he was not
5 treated uncivilly.
6     Q.  Well, uncivilly -- Does uncivilly -- Does the
7 question of whether he was treated civilly or uncivilly
8 include an examination of the reasons for the stop, the
9 seizure, or putting the handcuffs on?
10     A.  Yes, that was part of the investigation.
11     Q.  Okay.  So, as part of your conclusion that
12 Mr. Chestnut's -- or your recommendation that
13 Mr. Chestnut's Complaint should not be sustained, you
14 would have had to conclude that there was reason to stop
15 him; correct?
16     A.  Correct.
17     Q.  And what was the reason to stop him?
18     A.  Based upon information they received that the
19 officer felt, you know, that his behavior was
20 suspicious --
21     Q.  Okay.
22     A.  -- and they stopped him.
23     Q.  Suspicious of what?
24     A.  Suspicious of -- She -- She felt that he was
25 following her around.

Page 48

1     Q.  Okay, is that against the law?
2     A.  Is it against the law?  No.  Is it suspicious?
3 Yes.
4     Q.  But suspicious of what?  Suspicious of --
5     A.  We don't know --
6     Q.  Does it have --
7     A.  -- what his tensions were.  That's why he was
8 stopped, to find out his tensions.
9     Q.  All right.  And are you telling me that it is
10 consistent with City -- St. Louis City Police Department
11 policy that an officer who is merely suspicious about a
12 citizen on the street can have that citizen stopped and
13 put in handcuffs and questioned?
14         MS. MCGOWAN:  Objection, misstates prior
15 testimony.  But go ahead.
16     A.  I mean, officers get calls for suspicious
17 persons every day.
18     Q.  Okay.
19     A.  They're -- They're going to investigate it.
20     Q.  All right.
21     A.  If they feel that his behavior -- You know,
22 whatever they felt his behavior was, was they -- they
23 were going to investigate it.  If they felt safe -- If
24 they didn't feel safe, they put him in handcuffs for a
25 minute, then yes, that's the way they treated it.

Page 49

1     Q.  All right.  It doesn't answer the precise
2 question.
3         MR. HERMAN:  Would you read back my precise
4 question, please?
5         (At this point, the reporter read back the
6         question beginning on Page 48, Line 9.)
7     A.  It depends on the circumstances --
8         (Questions by Mr. Herman)
9     Q.  In this particular --
10     A.  -- but yes --
11     Q.  -- case?
12     A.  -- they -- they can do that.
13     Q.  Okay.  Even though -- Well, was there any
14 reason -- Did your investigation show any reason that any
15 officer had that Mr. Chestnut was committing a crime?
16     A.  Not -- Not from my investigation, no.
17     Q.  Okay.  No -- There wasn't any officer who
18 responded to your memos that said we thought Mr. Chestnut
19 was committing a crime?
20     A.  No, then there would have been an arrest
21 report if he had committed a crime.
22     Q.  So, the answer to my question was no, there
23 was no officer who told you as part of the investigation
24 that they thought or suspected or believed that
25 Mr. Chestnut was committing a crime?

MASUGA COURT REPORTING
314/781-1447

Page 50

1    A.   Correct.
2    Q.   And despite the fact that Mr. Chestnut --
3  despite the fact that none of the officers thought
4  Mr. Chestnut was engaged in any criminal activity, you
5  still believe that it was appropriate, it was within
6  St. Louis City Police Department policy to order
7  Mr. Chestnut to stop and to seize him by placing
8  handcuffs on him?
9        MS. MCGOWAN:  Objection, legal conclusion.
10    A.   That's -- I mean, that's what hap- -- that's
11  what occurred, so --
12    Q.   And you thought that was within St. Louis City
13  policy; is that correct?
14        MS. MCGOWAN:  Again, he's not designated on
15    topic 11.  You can go ahead and answer, but I'm
16    objecting.
17    A.   Right, I found no evidence one way or the
18  other that that was in violation.
19    Q.   And you had to make this conclusion in order
20  to reach the recommendation that you reached?
21    A.   Correct.
22    Q.   All right.
23        (At this point, an off-the-record discussion
24        was had.)
25    Q.   Where in Exhibit 103 do you reach your

Page 51

1  conclusions?
2    A.   In 103?
3    Q.   Exhibit 103.
4    A.   Okay.
5    Q.   Is that where -- Well, maybe I should ask you.
6  Is 103 the document in which you report your conclusions?
7    A.   Well, what I -- what this report does is my
8  findings.  It describes the allegation and then my
9  findings on Pages 3 of 5, 4 of 5, and 5 of 5.
10    Q.   All right.
11    A.   And then I make on the front page a
12  recommendation.
13    Q.   It divides it up into Allegation A.  Is there
14  an Allegation B?
15    A.   No, just Allegation A.
16    Q.   Just Allegation A.  And what is -- can you
17  state Allegation A to me?
18    A.   Allegation A is what Mr. Chestnut alleged his
19  complaints, which was under our definition in our
20  policies uncivil treatment.
21    Q.   So, since Mr. Chestnut's Complaint includes
22  challenging the reasons for the officers stopping him,
23  seizing him, and handcuffing him, where in your
24  conclusions or your report does it indicate what the
25  reasons for the stop of Mr. Chestnut were or his seizure

Page 52

1  or handcuffing him?
2    A.   Well, I mean, it describes the -- the call
3  from dis- -- or the dispatch ticket that showed that
4  Officer Graham was requesting assistance for her
5  observations of Mr. Chestnut where she had seen him I
6  think two different times in the park watching her, so
7  she recalled -- she requested assistance and that's what
8  brought the officers there and that's why they came in
9  contact with him, talked to him, handcuffed him, asked
10  him for identification.
11    Q.   Is watching -- Is -- When a citizen in a
12  public place watches police activity, is that grounds for
13  putting handcuffs on that person?
14        MS. MCGOWAN:  Objection, vague.  Calls for
15    speculation.
16    A.   If -- If just -- just watching, no, we get
17  watched every day.
18    Q.   Okay.  And, so, what did Mr. Chestnut do
19  besides watching?
20    A.   According to the Officer Graham, that she
21  noticed him -- she was stopping cars over there for
22  traffic violations and noticed him, you know, from what
23  she describes, kind of lurking behind trees, watching
24  what she was doing and that made her feel uncomfortable.
25    Q.   What is -- What is observing her, what she --

Page 53

1  what Officer Burns was doing -- It's officer Burns,
2  right?
3        MR. TIMMERMAN:  Graham.
4    Q.   Officer Graham.  What's wrong with that?
5  What's wrong with watching -- with Chestnut watching what
6  Officer Graham was doing?
7    A.   I don't -- don't know that there was anything
8  wrong with it, but she -- I mean --
9    Q.   It's not --
10    A.   -- that's based upon -- it wasn't my -- I
11  wasn't there.  I didn't see him doing it.
12    Q.   I understand, but you investigated it?
13    A.   Correct.
14    Q.   All right, And you came to conclusions that
15  there was nothing wrong with what happened?
16    A.   Correct.
17    Q.   And that requires determination as to what the
18  reasons that the officers had to do what they did to
19  Mr. Chestnut; correct?
20    A.   Right.
21    Q.   And you -- And now we're trying to get down to
22  the reasons and you're telling me that the reason or one
23  of the reasons that they -- that the officers did what
24  they did to Mr. Chestnut was that he was watching
25  Officer --

MASUGA COURT REPORTING
314/781-1447

Page 54

1    MR. TIMMERMAN: Graham.
2    Q. -- Graham? Graham, right?
3    A. Correct.
4    Q. Anything else?
5    A. Any other reason as to --
6    Q. Any other reason that they -- that they
7 approached?
8    A. No, that's what -- that's the reason --
9    Q. Okay.
10   A. -- that's what they were called there for.
11   Q. And you're telling me that because it's in a
12 public place, there's no -- it's not a crime to watch a
13 police officer do what they're doing?
14   A. Correct.
15   Q. It's not even a crime to follow the police
16 officer from place to place; correct?
17   A. Correct.
18   Q. It's not a crime to be in the park where
19 Mr. Chestnut was?
20   A. Correct.
21      MS. MCGOWAN: I'm going to object as vague.
22   Q. Well, you don't -- you don't have any
23 information that Mr. Chestnut was engaging in criminal
24 behavior by being in the park at the place he was found;
25 correct?

Page 55

1    A. Correct.
2    Q. And none of the officers that reported to you
3 has reported that Mr. Chestnut was engaging in any kind
4 of criminal conduct; correct?
5    A. Correct.
6    Q. Even if Mr. Chestnut followed -- allegedly
7 followed Officer --
8      MR. TIMMERMAN: Graham.
9    Q. -- Graham from one police action to another?
10   A. Correct.
11   Q. Nothing wrong with that, right?
12   A. Not -- Not to me --
13   Q. Okay.
14   A. -- but I wasn't there.
15   Q. So -- But that was the basis that was reported
16 to you for approaching Mr. Chestnut; correct?
17   A. Correct.
18   Q. And it was the basis for ordering him to stop;
19 correct?
20   A. Correct.
21   Q. And it was the basis for telling Mr. Chestnut
22 that he was not free to go, right?
23   A. Correct.
24   Q. And that was the basis for ultimately for
25 putting handcuffs on Mr. Chestnut --

Page 56

1      MS. MCGOWAN: Objection, foundation.
2    Q. -- correct?
3    A. No, the reason that he gave for putting
4 handcuffs on him was for his safety and for
5 Mr. Chestnut's safety.
6    Q. Okay. So, let's talk about that. Did any
7 officer report to you that they thought Mr. Chestnut was
8 armed or dangerous or carrying a weapon of some sort?
9    A. No.
10   Q. And are you telling me that it is within the
11 policy of the City of St. Louis Police Department that
12 they can arrest somebody because the officer is worried
13 about the safety of -- Well, that's -- I'm going to
14 strike that whole question.
15      Is it within the policy of the City of
16 St. Louis Police Department that an officer can place
17 handcuffs on a suspect for the safety of the officer
18 without having any knowledge that the person is armed or
19 dangerous or carrying a weapon?
20   A. When they initially come into contact --
21   Q. Yes.
22   A. -- yes.
23   Q. That is within the policy of the City of
24 St. Louis.
25   A. Yes.

Page 57

1    Q. -- Police Department, right?
2    A. Uh-huh.
3    Q. Let's talk about questioning. Did you ask
4 questions of any of the officers who were involved as to
5 what they -- what information they demanded from
6 Chestnut?
7    A. Yes.
8    Q. And what information did they demand to your
9 knowledge?
10   A. I believe they wanted to know his name, date
11 of birth.
12   Q. Is it appropriate for somebody who is stopped
13 to be asked their name and be required to give their
14 name?
15   A. Yes.
16   Q. All right. And they asked him for a date of
17 birth?
18   A. Yes.
19   Q. Did Mr. Chestnut provide his name?
20   A. I believe so, yes.
21   Q. Okay. And they asked for his date of birth?
22   A. Yes.
23   Q. Did Mr. Chestnut provide his date of birth?
24   A. I believe so, yes.
25   Q. Okay. And you believe it's appropriate within

15 (Pages 54 to 57)

Page 58

1 the policies of the St. Louis City Police Department to
2 request that information?
3 A. Yes.
4 Q. All right. And he did comply?
5 A. Yes.
6 Q. What else did they -- what other information
7 did they request?
8 A. I believe they asked him for his Social
9 Security number.
10 Q. All right. And is it within the policy of the
11 St. Louis City Police Department to require disclosure of
12 the Social Security number?
13 MS. MCGOWAN: Again I'm objecting. This is
14 getting a little too into topic 11. But subject to
15 that, you can answer if you know.
16 A. That's a standard question we ask. I couldn't
17 tell you if it's a policy or not.
18 Q. Okay. And do you know what the response --
19 what Mr. Chestnut's response was?
20 A. I believe he said that he would only give the
21 last four digits of his Social Security number.
22 Q. Is it a violation of any law to refuse to --
23 to refuse a police officer's request for your Social
24 Security number?
25 A. Not that I'm aware of.

Page 59

1 Q. And it's my understanding that despite the
2 fact that Mr. Chestnut refused to give his Social
3 Security number or anything more than the last four
4 digits, they were still able to run a REJIS report on
5 him; is that correct?
6 A. Correct.
7 MS. MCGOWAN: Objection, foundation.
8 Q. And the REJIS report can be run with name,
9 address, and date of birth; correct?
10 A. Yes.
11 Q. Don't need the Social Security number?
12 A. Social Security number gives you a little bit
13 more information.
14 Q. But it's possible to run the REJIS report
15 without it?
16 A. Yes.
17 Q. All right. And, in fact, in this case they
18 did?
19 A. Yes.
20 Q. And even if he didn't provide the Social
21 Security number, you're not aware of it being any kind of
22 crime to refuse to give that information?
23 A. Not that I'm aware of.
24 Q. And it's -- is it a basis for arrest?
25 A. No.

Page 60

1 Q. Is it a basis for handcuffing to refuse to
2 give that Social Security information?
3 A. No.
4 Q. What does your investigation disclose or what
5 did your investigation disclose as to Mr. Chestnut's
6 location when he was first seen by Officer --
7 MR. TIMMERMAN: Graham.
8 Q. -- Graham?
9 A. He was seen somewhere in Tower Grove Park.
10 Q. Okay. On the sidewalk?
11 A. It was like inside the park near Arsenal.
12 Q. Look in your report and see if that...
13 A. Uh-huh.
14 (At this point, an off-the-record discussion
15 was had.)
16 A. Arsenal and Gustine was the location she
17 provided.
18 Q. And she provided information to you that he
19 was standing on the sidewalk when she first saw him;
20 correct?
21 A. She gave a description of requesting the
22 district to respond. Just said she (sic) was watching
23 her as she stopped vehicles for traffic violations. I do
24 not know the exact location of where he was.
25 Q. Okay. Look at Page 4 of 5 in Exhibit 103.

Page 61

1 Third full paragraph has information provided to you by
2 Sergeant Lathan --
3 A. Okay.
4 Q. -- right? And do you see in that paragraph a
5 report as to where Mr. Chestnut was standing when she was
6 first -- when he was first seen?
7 A. Well, that's where Sergeant Lathan saw -- saw
8 them standing.
9 Q. On the sidewalk?
10 A. Right.
11 Q. Right.
12 A. I don't know where he was prior to when
13 Sergeant Lathan responded.
14 Q. Do you -- Does -- Did your investigation
15 conclude as to what Mr. Chestnut was doing in the park on
16 that evening?
17 A. I mean, just based on his statements, he was
18 jogging.
19 Q. And was he dressed consistent with jogging?
20 A. From the description I gave, I believe he was
21 in shorts.
22 Q. Running shorts and a T-shirt --
23 A. Correct.
24 Q. -- right? And it's what people do in the
25 park, one of the things people do in that park is to

16 (Pages 58 to 61)

Page 62

1  run -- run the track around the outside of the park,
2  right?
3      A.  That's one of the things, yes.
4      Q.  And that's what he said he was doing, right?
5      A.  Correct.
6      Q.  Do you have any reason to believe that isn't
7  true?
8      A.  No, that's his statement.
9      Q.  Well, I know that's what he said --
10     A.  Right.
11     Q.  -- but do you have any reason -- did anybody
12 report to you any information that leads you to believe
13 that he was there for some reason other than jogging in
14 the park?
15     A.  Well, I mean, the same paragraph, I guess
16 Officer Graham reports to Sergeant Lathan that he was
17 standing in the park in the shadows of the tree watching
18 her car stop, so...
19     Q.  Okay.  And when you say the shadows of the
20 trees, do you have any idea what that means?
21     A.  Well, trees make shadows --
22     Q.  I know, but --
23     A.  -- and --
24     Q.  -- are there trees in the park?
25     A.  Yes.

Page 63

1      Q.  And you've seen that park before?
2      A.  Yes.
3      Q.  And perhaps you've patrolled that area?
4      A.  Uh-huh, yes.
5      Q.  And the entire or at that location, Arsenal
6  and what is it?
7      A.  Gustine.
8      Q.  Arsenal and Gustine, that sidewalk is
9  tree-lined?
10     A.  Yes.
11     Q.  Anybody standing on the sidewalk is standing
12 in the shadow of the tree?
13     A.  Possibly.
14     Q.  So, standing in the shadow of the tree, does
15 that state a crime?
16     A.  No.
17     Q.  Okay.  Is that standing in the shadow of the
18 tree suspicious in some way?
19     A.  Not to me, but, I mean, this officer felt so.
20     Q.  When an officer makes an arrest, when an
21 officer of the City of St. Louis Police Department makes
22 an arrest, is it required that a report be prepared?
23     A.  Yes.
24     Q.  All right.  Was there a report made by the
25 arresting officer in this case?

Page 64

1      A.  There was no arrest in this case.
2      Q.  All right.  Was there a report made by the
3  person, by the officer who placed handcuffs on
4  Mr. Chestnut regarding the circumstances and the reasons
5  for placing Mr. Chestnut in handcuffs?
6      A.  No.
7      Q.  And, so, now we're going to talk about arrest.
8      A.  Okay.
9      Q.  You are telling me that as a matter of your
10 understanding of the policies of the St. Louis City
11 Police Department and in your capacity as investigating
12 this incident that Mr. Chestnut was not arrested?
13     A.  Correct.
14     Q.  And in doing so, you are telling me that when
15 handcuffs were placed upon Mr. Chestnut, that was not an
16 arrest; is that correct?
17     A.  That's correct.
18     Q.  And that's your understanding of the policies
19 of the City of St. Louis Police Department; is that
20 correct?
21     A.  That placing somebody in handcuffs --
22     Q.  Right.
23     A.  -- is not an arrest?
24     Q.  That's correct.
25     A.  Not in all cases; correct.

Page 65

1      Q.  In this particular case when handcuffs were
2  placed on Mr. Chestnut, was he or was not -- was he not
3  arrested?
4          MS. MCGOWAN:  Objection, asked and answered.
5      A.  He was not arrested.
6      Q.  Right.  What would it have taken for
7  Mr. Chestnut to be -- have been considered to be
8  arrested?
9          MS. MCGOWAN:  Objection, calls for
10     speculation.
11     A.  Well, the officer would have informed him he's
12 under arrest, would have given him his rights and told
13 him what crime he was being charged with.
14     Q.  Okay.  So, you're telling me that the mere
15 fact that Mr. Chestnut was told that he could not leave
16 the location and that handcuffs were placed upon him,
17 that that did not constitute an arrest because he was not
18 informed verbally that he was under arrest; is that
19 correct?
20         MS. MCGOWAN:  Objection, foundation.  Legal
21     conclusion.
22     A.  Correct.
23     Q.  All right.  Was he seized?
24         MS. MCGOWAN:  Objection, legal conclusion,
25     vague.

MASUGA COURT REPORTING
314/781-1447

Page 66

1    A.  He was detained.
2    Q.  What's the difference between seizure and
3 detention?
4    A.  That's the terminology I use, detain.
5    Q.  All right, detained.  And what does detention
6 mean?
7    A.  Well, he was -- he was stopped and that
8 officers conducted an investigation based upon
9 information they had.
10    Q.  All right.  When he was stopped, he was not
11 free to leave; correct?
12    A.  Correct, he was in handcuffs.
13    Q.  All right.  And you are telling me that it is
14 the policy of the City of St. Louis Police Department
15 consistent with your investigation and the conclusions
16 that you reached that when Mr. Chestnut was stopped and
17 handcuffs were placed upon him, he was not seized --
18    MS. MCGOWAN:  Objection, legal conclusion.
19    Q.  -- is that correct?
20    A.  I mean --
21    MS. MCGOWAN:  Vague.
22    A.  -- I'm -- I'm using "detained."  That's --
23 That's the same as "seized," then --
24    Q.  He was not detained, all right.  Let's read
25 the same -- We'll read the same question based that it's

Page 67

1 your conclusion that the policy of the St. Louis City
2 Police Department consistent with your investigation and
3 the conclusions you reached and Mr. Chestnut after having
4 been placed in handcuffs and stopped was not detained?
5    A.  He was detained.
6    Q.  He was detained?
7    A.  Yes.
8    Q.  All right.  But detained does not constitute
9 arrested; is that what you're telling me?
10    A.  Correct.
11    Q.  Is it a policy of the City of St. Louis Police
12 Department that you can be -- that a citizen in a public
13 place can be detained without believing that that citizen
14 was engaged in any crime?
15    MS. MCGOWAN:  I -- I'm objecting.  We are
16 getting into topic 11.  This is squarely topic 11.
17    MR. HERMAN:  Well, but these are
18 conclusions -- for the record, these are conclusions
19 he would have had to reach in this particular
20 investigation.
21    MS. MCGOWAN:  Okay, I'll allow this one, but
22 we're -- we're not going into the policies of the
23 department.  We'll do that Thursday.
24    MR. HERMAN:  We're going to get -- We're going
25 to get there eventually, too, but right now I want

Page 68

1 to know how policies applied to the investigation
2 and the conclusions and I think I'm entitled to do
3 that because he wrote the report.
4    (Questions by Mr. Herman)
5    Q.  You with me?
6    A.  Yes.
7    Q.  I'm not trying to be sticky here, but I want
8 to make sure we know --
9    A.  I understand.
10    Q.  -- all the details.
11    MR. HERMAN:  And, so, I've forgotten.  Would
12 you read back the last question, please?
13    (At this point, the reporter read back the
14    question beginning on Page 67, Line 11.)
15    A.  I don't know that this occurred in this case,
16 but yes, they -- I mean, they -- they can be detained for
17 an investigation.
18    (Questions by Mr. Herman)
19    Q.  So --
20    A.  The officer followed his training.
21    Q.  And -- All right, so, let's talk about it's
22 the training of the police officers of the City of
23 St. Louis or training that you expect them to have that
24 if they encounter a citizen in public, they can detain
25 them without consent, right, they can detain them without

Page 69

1 having prior reason to believe that that citizen is
2 engaged in any criminal activity?
3    MS. MCGOWAN:  Objection, vague.
4    A.  They had information that he may have been a
5 suspicious person, that they don't know exactly what he
6 did yet; that's what they're investigating.
7    Q.  Not my question.  I understand -- I appreciate
8 the answer because it was the next one we were getting
9 to, but my precise question is, and I would read it back
10 one more time.
11    (At this point, the reporter read back the
12    question beginning on Page 68, Line 21.)
13    A.  In this -- I mean, yes, in some cases.
14    (Questions by Mr. Herman)
15    Q.  In some cases, including this one?
16    A.  Yes.
17    Q.  And this one with Mr. Chestnut?
18    A.  Yes.
19    Q.  And you also said that the reasons for putting
20 handcuffs on Mr. Chestnut were for the officer's safety
21 and the safety of Mr. Chestnut and other officers on the
22 scene; correct?
23    A.  Correct.
24    Q.  And is it your belief -- Well, strike that.
25 Are you telling me that it's the policy of the City of

18 (Pages 66 to 69)

MASUGA COURT REPORTING
314/781-1447

Page 70

1 St. Louis Police Department that citizens in public can
2 be placed into handcuffs for the safety of officers or --
3 and the safety of the individual without any belief that
4 the citizen is armed or dangerous?
5    MS. MCGOWAN: Objection, vague.
6    A. At the time, yes. They don't know yet if he's
7 armed or dangerous.
8    Q. So, they can put him into -- they can put him
9 into handcuffs, officers can put him into handcuffs
10 without knowing that he's armed or dangerous?
11    A. For the officer's safety, yes.
12    Q. For the officer's safety?
13    A. Yes.
14    Q. And that is your understanding of the policy
15 of the City of St. Louis?
16    A. That's -- Well, I mean, that's --
17    Q. City of St. Louis Police Department --
18    A. -- training.
19    Q. -- right?
20    A. Right. That's part of the officers' training
21 for officer safety.
22    Q. Let's talk about a frisk. Is that the word
23 you use?
24    A. Yes.
25    Q. Pat-down search or frisk, which do you prefer?

Page 71

1    A. Pat-down search.
2    Q. Pat-down search. Tell me, did your
3 investigation reach any conclusion as to whether or not
4 Mr. Chestnut was the subject of a pat-down search?
5    A. I believe so, yes.
6    Q. And what is the policy of the St. Louis City
7 Police Department with respect to when a citizen in a
8 public place can be subject to a pat-down search?
9    MS. MCGOWAN: Again, this is a question
10    directed at topic 11(e) and we have another sergeant
11    designated --
12    MR. HERMAN: I understand.
13    MS. MCGOWAN: -- on this topic.
14    MR. HERMAN: Your objection is noted.
15    A. I believe we've conducted a pat-down search
16 based upon reasonable suspicious.
17    (Questions by Mr. Herman)
18    Q. Of what?
19    A. Of, in this case, that they received a call
20 for a suspicious person.
21    Q. All right. So, you're telling me, I think,
22 that the -- there is no requirement as a prerequisite to
23 a pat-down search that the officer believed the person is
24 armed and dangerous; is that correct?
25    A. That he believed he was armed and dangerous?

Page 72

1    Q. Yes.
2    A. No, that's what they're trying to determine.
3 Quick pat-down search to determine if there's any kind of
4 bulges in his pocket that might be a weapon.
5    Q. So, let me take another step back. You're
6 telling me that consistent with -- with the policy of the
7 St. Louis City Police Department, an officer can approach
8 a citizen on a public street, put them in handcuffs and
9 pat them down without having any prior knowledge that the
10 per- -- that the citizen is armed and dangerous or
11 engaging in any criminal activity; correct?
12    A. In just any circumstance?
13    Q. In any circumstance.
14    A. No, it would have to have some type of
15 information as we just don't approach people walking down
16 the street, generally. There's usually something that
17 brings us to that person.
18    Q. Okay. And -- But let's focus on Mr. Chestnut
19 here.
20    A. Okay.
21    Q. There was no prior -- There was no knowledge
22 of the police officers that he was armed or dangerous;
23 correct?
24    A. Correct.
25    Q. And there was no knowledge of the police

Page 73

1 officers that he was engaging in any criminal activity;
2 correct?
3    A. There was, again, information that brought
4 him -- that brought the officers there that believed he
5 was suspicious.
6    Q. Suspicious, but --
7    A. Right, then that's -- then they're going to
8 conduct an investigation to determine if there is a
9 crime.
10    Q. So -- Well, so, you agree that at the time he
11 was stopped, there was no reasonable suspicion that he --
12 articulable suspicion that he was engaging in any
13 criminal activity, you were just want- -- they were
14 wanting to find out if he was, right?
15    A. Correct.
16    Q. Okay, but at the time they stopped him, they
17 didn't know if he was or not?
18    A. Correct.
19    Q. All right. And at the time they stopped
20 Mr. Chestnut, they didn't know if he was armed or
21 dangerous?
22    A. Correct.
23    Q. And that you believe and it's -- it's a
24 element of your conclusions in your report that it was
25 within policy of the St. Louis City Police Department

MASUGA COURT REPORTING
314/781-1447

Page 74

1  that stopping Mr. Chestnut, handcuffing him, and patting
2  him down was authorized within the St. Louis City Police
3  Department policy, despite the fact that at the time of
4  the stop, the officers had no reason to believe that he
5  was engaged in criminal activity or that he was armed or
6  dangerous, right?
7          MS. MCGOWAN:  Objection, foundation.
8      A.  Correct.
9      Q.  All right.
10         MS. MCGOWAN:  Bob, let's do a quick five
11 minute break.
12         MR. HERMAN:  Yeah, yeah, sure.
13         (At this point, there was a break taken from
14 10:39 a.m. to 10:44 a.m.)
15         MR. HERMAN:  All right, we're back on the
16 record.
17         (Questions by Mr. Herman)
18     Q.  So, let's try and wrap this up.  You had to
19 reach conclusions about the complaints that Mr. Chestnut
20 made about these various officers and those conclusions
21 are embodied in your recommendation that is Exhibit 103;
22 correct?
23     A.  Correct.
24     Q.  And by the way, Exhibit 103 is a true and
25 accurate copy of the recommendation report that you

Page 75

1  filed; correct?
2      A.  Yes, it is.  Yes.
3      Q.  And you, in fact, signed this?
4      A.  I did sign it --
5      Q.  Initialed?
6      A.  -- at the top --
7      Q.  Okay.
8      A.  -- yes.
9      Q.  And this was reviewed by a number of people?
10     A.  Correct.
11     Q.  And tell me all the people that it was
12 reviewed by and their -- their -- their input or their
13 involvement with this matter.
14     A.  Okay.  We have the Commander of the Bureau of
15 Community Policing, BOCP, is the first line.  That's
16 Major Jerry Leyshock.  After that, it goes to the
17 Commander of Internal Affairs, who at the time was
18 Lieutenant Scott Gardner.  After that, it goes to the --
19 has the Inspector of Police and Assistant Chief of Police
20 line and Lieutenant Colonel Lawrence O'Toole, who was the
21 Assistant Chief, signed both lines.  And then it goes for
22 final recommendation to the Chief of Police, which at the
23 time was Sam Dotson.
24     Q.  And all of those people were required to not
25 only indicate the date that they reviewed it, but whether

Page 76

1  or not they agreed with the recommendations made and
2  whether or not the recommendations made required a policy
3  review; correct?
4      A.  Correct.
5      Q.  So, did all these people that you just
6  mentioned agree with your recommendations?
7      A.  Yes.
8      Q.  What does it mean -- What is the question
9  being asked when it says policy review required?
10     A.  I would imagine if there was a certain policy
11 that was violated if the -- the person needed to review
12 it or not.
13     Q.  So, if the person charged with or accused of
14 some bad behavior needed to review policy or is it --
15 does it involve whether the policy needs to be rewritten?
16 I'm ask- ---
17     A.  Right.
18     Q.  It could be interpreted either way.  Which
19 way?
20     A.  Right, from my understanding is if the policy
21 needed to be reviewed or interpreted.
22     Q.  All right.  And from the -- what do you gather
23 from the response to that question, policy review
24 required, from all four of the individuals?
25         MS. MCGOWAN:  Objection, calls for

Page 77

1  speculation.
2          MR. HERMAN:  Well, I mean, there's an answer
3  here.
4      A.  I mean, they each signed "no."
5          (Questions by Mr. Herman)
6      Q.  "No," meaning there's no policy change
7  required?
8      A.  Correct.
9      Q.  All right.  And the policy -- So, it was
10 necessary for you to consider the policies in making
11 these recommendations; correct?
12     A.  Correct.
13     Q.  All right.  And you did consider the policies?
14     A.  Correct.
15     Q.  And, so, just to summarize, the policy --
16 policy of the St. Louis City Police Department was not
17 violated by Mr. Chestnut's stop; correct?
18     A.  Correct.
19         MS. MCGOWAN:  Objection, asked and answered.
20     Q.  Correct?
21     A.  Correct.
22     Q.  And that his stop without -- without an
23 articulable suspicion that he was engaged in criminal
24 activity was within the policies of the City of St. Louis
25 Police Department; correct?

20  (Pages 74 to 77)

Page  78

1    MS. MCGOWAN:  Objection, asked and answered
2 multiple times.
3    MR. HERMAN:  That's a trial objection.  But
4 I'll note your objection.
5    A.  Correct.
6        (Questions by Mr. Herman)
7    Q.  You need that read back?  Correct?
8    A.  Correct.
9    Q.  And that the -- that the seizure of
10 Mr. Chestnut by ordering him to stop where he was did not
11 violate the policies of the City of St. Louis Police
12 Department, despite the fact that none of the officers
13 had any articulable suspicion that he was engaged in any
14 criminal activity; correct?
15    A.  Correct.
16    Q.  And that placing handcuffs on Mr. Chestnut was
17 within the applicable St. Louis City Police Department
18 policies, despite the fact that -- that there was no
19 reason to believe -- that none of the officers involved
20 had a reason to believe that he was armed or dangerous;
21 correct?
22    MS. MCGOWAN:  Objection, misstates prior
23 testimony.
24    A.  Correct.
25    Q.  And that questioning of Mr. Chestnut,

Page  79

1 demanding his Social Security number was within the
2 policies of the City of St. Louis Police Department?
3    A.  Correct.
4    Q.  You've had a coup- -- We've had a couple of
5 breaks and it's at the end of the deposition.  Is there
6 anything that I've asked that you think I was either
7 trying to fool you or trying to confuse you or that I did
8 so inadvertently?
9    A.  No.
10    Q.  Anything that I asked or that we discussed
11 that you didn't understand and you now want to supplement
12 your answer?
13    A.  No.
14    MR. HERMAN:  That's all the questions I've
15 got.
16    MS. MCGOWAN:  Okay, thank you.
17    MR. HERMAN:  You want to ask some questions?
18    MS. MCGOWAN:  No, I don't have any questions
19 today.
20    Lieutenant Lauer, you have the right to read
21 your transcript or we can waive signature.  If you
22 waive signature, you're saying that you trust that
23 Sara took down everything accurately today.
24    THE WITNESS:  I'll waive my signature.
25    MR. HERMAN:  Thank you so much for you time.

Page  80

1    THE WITNESS:  Thank you.
2    (Deposition adjourned at 10:51 a.m.)
3    (SIGNATURE WAIVED)

Page  81

C E R T I F I C A T E

I, Sara Alice Masuga, Certified Shorthand
Reporter and Certified Court Reporter within and for the
States of Illinois and Missouri, DO HEREBY CERTIFY that
pursuant to agreement between counsel that on May 1,
2018, at the offices of City Counselor's Office, 1200
Market Street, Room 314 City Hall, St. Louis, Missouri,
there appeared before me the aforementioned witness and,
having been duly sworn to tell the whole truth, was
examined and the examination was taken down in shorthand
by me and afterwards transcribed upon the computer and
said transcription is herewith returned.

IN WITNESS WHEREOF, I have hereunto subscribed my
name this 21st day of May, 2018.

_____
Sara Alice Masuga, CSR, CCR
IL CSR No. 084-002993
MO CCR No. 1012

21  (Pages 78 to 81)

**A**

**able** 20:2,3 59:4
**access** 12:22
**accompanied** 22:6
**account** 4:6
**accumulating** 18:22
**accurate** 22:12 38:7,8,18 74:25
**accurately** 79:23
**accused** 76:15
**acknowledging** 7:5
**acting** 23:18
**action** 21:11 26:11 55:9
**actions** 20:5,7 21:5,5 45:15
**activity** 50:4 52:12 69:2 72:11 73:1,13 74:5 77:24 78:14
**actual** 43:1
**added** 16:24
**address** 59:9
**adjourned** 80:2
**administrative** 4:11 41:25
**affairs** 9:5,9,11 9:12 10:23 11:19 12:4,8 13:18 14:24,25 23:14 75:17
**afield** 32:9
**aforementioned** 81:9
**agree** 22:16 24:1 33:9 40:17,25 41:5 73:10 76:6
**agreed** 3:1,14 76:1
**agreement** 22:8 22:18 81:6

**ahead** 24:5 30:6 48:15 50:15
**al** 1:6 2:6
**alice** 1:20 3:9 81:3,22
**allegation** 11:10 17:12,14 18:2 18:3,8,10,15 19:14,15 51:8 51:13,14,15,16 51:17,18
**allegations** 16:15 18:20
**alleged** 51:18
**allegedly** 55:6
**allow** 29:11 67:21
**allows** 12:24
**angry** 41:1
**answer** 24:13 31:12,17,21 32:7,12 35:3 36:7 49:1,22 50:15 58:15 69:8 77:2 79:12
**answered** 28:13 65:4 77:19 78:1
**answers** 5:20 6:6 6:6 42:10,10
**anybody** 62:11 63:11
**appear** 42:24
**appearances** 2:9
**appeared** 38:13 81:9
**appears** 22:5 38:5
**applicable** 78:17
**applied** 68:1
**appreciate** 69:7
**approach** 72:7 72:15
**approached** 26:10 54:7
**approaching**

55:16
**appropriate** 17:11 18:1,12 20:5,7,8,8,9 29:23 50:5 57:12,25
**area** 63:3
**armed** 56:8,18 70:4,7,10 71:24,25 72:10 72:22 73:20 74:5 78:20
**arrest** 26:13 28:1,3,24 49:20 56:12 59:24 63:20,22 64:1,7,16,23 65:12,17,18
**arrested** 25:5 39:23 40:11 64:12 65:3,5,8 67:9
**arresting** 63:25
**arrive** 33:21
**arrived** 42:17,18
**arsenal** 60:11,16 63:5,8
**articulable** 73:12 77:23 78:13
**aside** 44:21
**asked** 6:24 7:24 7:25 10:16 22:16 25:25 26:14 28:13 35:2 39:5 44:22 45:4,12 52:9 57:13,16 57:21 58:8 65:4 76:9 77:19 78:1 79:6,10
**asking** 5:19 9:23 21:9 27:1,5 28:8 29:19 40:10
**asks** 40:6,6

**assigned** 11:22 12:8 38:2,10 38:13
**assist** 10:15
**assistance** 37:2 37:10 44:19,22 52:4,7
**assistant** 75:19 75:21
**assume** 27:7
**attached** 4:13
**attorney** 8:2,5
**authentic** 22:11
**authenticity** 22:10
**authority** 33:7
**authorized** 29:20 47:2 74:2
**auto** 29:22
**avenue** 1:24
**aware** 58:25 59:21,23

**B**

**b** 51:14
**back** 10:7 15:25 19:6 21:15,17 21:17 31:18 35:3,13 49:3,5 68:12,13 69:9 69:11 72:5 74:15 78:7
**backwards** 11:2
**bad** 76:14
**ballpark** 29:23
**based** 18:7 20:16 23:22 34:13,25 42:4 45:13 47:18 53:10 61:17 66:8,25 71:16
**basically** 16:7 18:2 20:10 40:10
**basis** 7:17 18:13 44:20,21 45:10

55:15,18,21,24 59:24 60:1
**beginning** 49:6 68:14 69:12
**behalf** 1:11 3:6 5:7 22:17
**behavior** 21:21 30:25 33:25 45:15 47:19 48:21,22 54:24 76:14
**belief** 69:24 70:3
**believe** 10:12,16 12:9,12 13:11 13:15 14:9 23:15,21 34:15 35:12 39:5 40:2 43:3 44:18 45:14 50:5 57:10,20 57:24,25 58:8 58:20 61:20 62:6,12 69:1 71:5,15 73:23 74:4 78:19,20
**believed** 33:16 44:24 49:24 71:23,25 73:4
**believing** 67:13
**better** 6:8
**birth** 57:11,17 57:21,23 59:9
**bit** 7:12 38:25 59:12
**bob** 5:13 8:10 9:21 74:10
**bockstruck** 36:13,14
**bocp** 75:15
**book** 21:15,17
**br** 45:10
**break** 74:11,13
**breaks** 79:5
**brings** 72:17
**brought** 52:8 73:3,4
**bulges** 72:4

burdensome 15:1
bureau 75:14
burglary 30:15
burns 15:11,13
36:21 39:7,9
39:15 41:12
42:13,19,21
53:1,1

**C**

c 81:1,1
call 18:8 26:11
26:12,12,13,16
30:19 33:16
36:3,21 42:1
52:2 71:19
called 12:20
33:23 54:10
calls 26:23 30:5
33:8,10 48:16
52:14 65:9
76:25
cant 6:8 45:21
capacity 6:15
31:11 64:11
car 62:18
carrying 56:8,19
cars 45:18 52:21
case 13:14,25
14:1 34:12
49:11 59:17
63:25 64:1
65:1 68:15
71:19
caseload 15:1
cases 64:25
69:13,15
cause 28:3 31:18
34:12
ccr 1:20,20
81:22,23
certain 20:3,4
76:10
certified 3:10,10
81:3,4
certify 81:5

chain 42:4
challenging
51:22
change 77:6
charge 16:5
charged 16:5
39:23 40:11
65:13 76:13
check 26:17,21
45:24
chestnut 1:3 2:3
4:6 9:14,19
10:11,16 11:12
11:15 14:1,2,6
14:8,11 21:20
22:6 23:19
24:2,16,22
25:10,14,20,25
36:8 37:1
38:16 39:16,18
39:21,22,25
40:19 42:14
43:2,12,19,21
43:21,24 44:8
44:9,9,13,17
44:20,21 45:3
45:10,18 49:15
49:18,25 50:2
50:4,7 51:18
51:25 52:5,18
53:5,19,24
54:19,23 55:3
55:6,16,21,25
56:7 57:6,19
57:23 59:2
61:5,15 64:4,5
64:12,15 65:2
65:7,15 66:16
67:3 69:17,20
69:21 71:4
72:18 73:20
74:1,19 78:10
78:16,25
chestnuts 18:19
39:1 40:22
41:1 45:15
46:1,1 47:12

47:13 51:21
56:5 58:19
60:5 77:17
chief 75:19,21
75:22
circumstance
24:8 25:6,7
72:12,13
circumstances
11:20 24:9
28:15,25 49:7
64:4
citizen 13:4,20
16:20 19:21
26:10,21 28:11
29:6,21 30:1
48:12,12 52:11
67:12,13 68:24
69:1 70:4 71:7
72:8,10
citizens 70:1
city 1:9 2:18,20
3:3,7,8 4:8,10
5:5 6:25 7:1,7
8:1,1 9:20
16:18 22:17
26:1,2,5 29:5
29:20 30:24
32:18 47:2
48:10,10 50:6
50:12 56:11,15
56:23 58:1,11
63:21 64:10,19
66:14 67:1,11
68:22 69:25
70:15,17 71:6
72:7 73:25
74:2 77:16,24
78:11,17 79:2
81:7,8
civil 3:6
civilly 47:7
clear 6:1 18:14
collected 17:24
19:5
collection 20:25
35:11 37:7

colonel 75:20
come 6:25 14:2
19:10 21:10
26:15 46:25
56:20
comes 17:16
comfortable
29:1
command 42:4
commander 9:2
9:10 11:21
15:5 75:14,17
commanders
15:4
commencement
5:1
commencing 5:8
commit 29:18
committed
30:15 34:18
49:21
committing
49:15,19,25
community
75:15
complainant
16:8,16 17:17
complainants
18:7
complaining
21:21 24:2
41:2
complains 24:16
24:22
complaint 9:14
10:19,22,25
11:5,6,8,18,19
11:25 12:7,9
12:24 13:5,8
13:21,22,24
14:3 15:24
16:15,19,24
19:24 20:15
22:6 23:17,18
23:20 24:22,25
34:23,24 36:8
36:17 38:15

39:1 40:18
41:1 47:13
51:21
complaints
12:17 15:3
25:4 38:16
40:22 46:1,2
51:19 74:19
completely 6:1
complied 3:13
comply 58:4
computer 81:12
concern 43:23
conclude 47:14
61:15
conclusion 24:4
25:15 26:24
33:10 40:5
46:24,25 47:11
50:9,19 65:21
65:24 66:18
67:1 71:3
conclusions 25:9
25:13,19,24
51:1,6,24
53:14 66:15
67:3,18,18
68:2 73:24
74:19,20
conduct 9:10,12
17:11,25 25:4
55:4 73:8
conducted 66:8
71:15
confuse 79:7
consent 68:25
consider 28:9
77:10,13
considered 65:7
consist 42:2
consistent 8:2
48:10 61:19
66:15 67:2
72:6
consists 5:18
42:3
constitute 65:17

Page 83

67:8
**contact** 13:20
52:9 56:20
**contacted** 10:14
**contents** 23:22
**continue** 27:6
**cop** 20:1
**copies** 22:12
**copy** 74:25
**corporate** 1:10
3:4 5:6 7:1,6
8:7 31:23
**correct** 7:2,7,8
7:18,19 8:3,16
11:12,13,16,17
11:25 12:1
15:19 18:20,25
19:3,4 21:3,4,7
22:14,18 23:3
23:9,12 24:16
24:17,24 25:3
34:16,20 35:24
35:25 38:19
40:15,16,22
41:3,4,8 42:19
43:14,15 44:11
46:2,16 47:3
47:15,16 50:1
50:13,21 53:13
53:16,19 54:3
54:14,16,17,20
54:25 55:1,4,5
55:10,16,17,19
55:20,23 56:2
59:5,6,9 60:20
61:23 62:5
64:13,16,17,20
64:24,25 65:19
65:22 66:11,12
66:19 67:10
69:22,23 71:24
72:11,23,24
73:2,15,18,22
74:8,22,23
75:1,10 76:3,4
77:8,11,12,14
77:17,18,20,21

77:25 78:5,7,8
78:14,15,21,24
79:3
**correctly** 8:14
12:9 34:19
**correspondence**
4:8
**couldnt** 58:16
**counsel** 3:2,2
81:6
**counselors** 2:18
3:8 81:7
**count** 35:14
**coup** 79:4
**couple** 79:4
**court** 1:1,24 2:1
3:10 5:21 6:8
81:4
**covered** 38:16
**crime** 29:18 33:4
33:6 34:17
39:23 49:15,19
49:21,25 54:12
54:15,18 59:22
63:15 65:13
67:14 73:9
**criminal** 30:25
50:4 54:23
55:4 69:2
72:11 73:1,13
74:5 77:23
78:14
**csr** 1:20,20
81:22,22
**cut** 9:16

---
**D**
**daily** 9:8
**dangerous** 56:8
56:19 70:4,7
70:10 71:24,25
72:10,22 73:21
74:6 78:20
**date** 11:4 57:10
57:16,21,23
59:9 75:25
**dated** 4:11 38:6

38:6
**davidson** 2:12
**day** 48:17 52:17
81:15
**dealt** 33:16
**decided** 14:24
**defendant** 7:7
**defendants** 1:7
2:7,17 3:2
**define** 20:19
**definition** 18:3
51:19
**deliver** 13:11
**demand** 57:8
**demanded** 57:5
**demanding** 79:1
**department** 4:8
4:10 6:16 8:1
12:16 20:25
23:20,22 26:3
26:4 29:5
32:18 47:2
48:10 50:6
56:11,16 57:1
58:1,11 63:21
64:11,19 66:14
67:2,12,23
70:1,17 71:7
72:7 73:25
74:3 77:16,25
78:12,17 79:2
**depending** 11:20
38:25
**depends** 26:25
27:12 28:14,25
30:7 49:7
**deponent** 3:15
**deposition** 1:9
3:3,12 4:3 5:1
5:15,16,18,23
5:24 8:7 79:5
80:2
**described** 23:23
44:23
**describes** 51:8
52:2,23
**description**

30:14 60:21
61:20
**designated** 8:18
8:21 29:9,12
30:5 31:7,23
31:24 32:10
50:14 71:11
**designee** 1:10
3:4 5:6
**despite** 50:2,3
59:1 74:3
78:12,18
**details** 68:10
**detain** 66:4
68:24,25
**detained** 25:5
66:1,5,22,24
67:4,5,6,8,13
68:16
**detention** 24:2,9
24:10 25:16,17
28:18,19,22
66:3,5
**determination**
19:10 20:12
21:11 53:17
**determinations**
19:13
**determine** 16:9
16:23 17:3,24
17:25 20:8
21:2 29:3
30:19 41:9
72:2,3 73:8
**determined**
30:20 34:24
36:18 38:11
**dibble** 38:2
**dibbles** 38:5
**didnt** 17:22
24:23 46:13
48:24 53:11
59:20 73:17,20
79:11
**difference** 28:21
46:7,9 66:2
**different** 19:13

29:23 33:12
38:25 52:6
**digits** 58:21 59:4
**direct** 5:10
43:10
**directed** 35:1
45:5 71:10
**directly** 8:6
**dis** 52:3
**disclose** 24:24
60:4,5
**disclosure** 58:11
**discovered** 20:6
**discussed** 79:10
**discussion** 17:1
35:4,21 41:18
42:6 50:23
60:14
**dispatch** 19:2
38:3,11 52:3
**distracted** 21:1
**district** 1:1,1 2:1
2:1 38:2 60:22
**divides** 51:13
**division** 1:2 2:2
9:3
**divorced** 15:15
**document** 6:22
22:4 35:24
36:4 41:24
51:6
**documents** 12:4
14:18 22:8,12
35:12,17,19,24
42:5
**doesnt** 29:1,1
42:24 49:1
**doing** 7:20 16:5
52:24 53:1,6
53:11 54:13
61:15 62:4
64:14
**don** 8:22
**dont** 9:16 10:6
13:4 20:1
23:14 24:1
28:9 32:5 33:5

33:7,19,21,22
34:7 40:2
45:11 48:5
53:7,7 54:22
54:22 59:11
61:12 68:15
69:5 70:6
72:15 79:18
**dotson** 75:23
**double** 7:20,23
**dressed** 61:19
**dual** 31:11
**duly** 81:10
**duty** 7:20

**E**

**e** 71:10 81:1,1
**earlier** 5:14
22:24
**eastern** 1:1,2 2:1
2:2
**ed** 12:4
**effect** 3:13
**eight** 43:6
**either** 11:20
76:18 79:6
**element** 73:24
**eliminate** 29:22
**email** 12:11,12
13:11
**emailed** 13:14
**embodied** 74:21
**employed** 6:14
**encompass** 25:4
**encounter** 68:24
**engaged** 50:4
67:14 69:2
74:5 77:23
78:13
**engaging** 54:23
55:3 72:11
73:1,12
**entire** 63:5
**entitled** 68:2
**envelope** 11:5
**erin** 2:19 7:4
22:7

**esq** 2:13,13,19
**establish** 20:3
**et** 1:6 2:6
**evening** 61:16
**event** 46:13
**events** 31:15
**eventually** 10:25
67:25
**evidence** 16:10
17:19 18:3,22
19:14,16,18
20:12,13,14
46:11,12,20
50:17
**exact** 60:24
**exactly** 33:22
69:5
**examination**
5:10 47:8
81:11
**examine** 17:3
**examined** 5:6
81:11
**exhibit** 4:1,1,3,5
4:7,10 5:2 6:19
22:1,3 23:8
34:22 35:6,9
35:23 41:20
42:8 44:2 45:6
50:25 51:3
60:25 74:21,24
**exhibits** 4:13
**exist** 45:14
**expect** 68:23
**explain** 6:2

**F**

**f** 81:1
**fact** 35:13 41:3
50:2,3 59:2,17
65:15 74:3
75:3 78:12,18
**facts** 17:25
20:11
**failed** 6:1
**fair** 20:20 24:8
24:15 33:5

42:8
**far** 17:9,10,12
17:14 31:2,2
32:9
**february** 9:19
**federal** 3:5,13
**feel** 10:17 24:23
29:1 48:21,24
52:24
**felt** 33:15 45:23
47:19,24 48:22
48:23 63:19
**female** 42:19
**file** 13:22
**filed** 10:19,22
11:12 19:1,2
75:1
**files** 22:13
**fills** 13:7
**final** 75:22
**find** 16:7,8 20:1
44:5 46:21
48:8 73:14
**findings** 42:5,5
44:5 51:8,9
**fine** 31:4 32:3
**first** 4:3 11:3,14
11:24,24 12:6
29:21 39:8,9
44:3,3 60:6,19
61:6,6 75:15
**five** 43:5 74:10
**focus** 72:18
**follow** 54:15
**followed** 44:24
55:6,7 68:20
**following** 10:13
47:25
**follows** 5:8
**fool** 79:7
**force** 3:12
**forgotten** 68:11
**form** 5:21 13:2,7
13:14
**forth** 9:13
**forwarded**
11:18

**found** 10:14
20:13 37:1
45:25 50:17
54:24
**foundation** 34:5
56:1 59:7
65:20 74:7
**four** 43:5 58:21
59:3 76:24
**free** 55:22 66:11
**frisk** 70:22,25
**front** 35:13
51:11
**full** 6:12 44:4
61:1
**further** 3:14
14:3 30:18
36:18

**G**

**gardner** 75:18
**gather** 76:22
**generally** 16:16
72:16
**generated** 36:9
38:20
**getting** 29:8 31:1
31:25 32:9,12
58:14 67:16
69:8
**give** 10:10 13:23
14:21 16:12
17:23 31:21
41:13,13 42:18
42:21 57:13
58:20 59:2,22
60:2
**given** 23:9 30:14
34:13 36:7
42:10 43:22
65:12
**gives** 59:12
**go** 10:7 18:11
19:8 21:8 24:5
30:6 39:8
48:15 50:15
55:22

**goes** 21:15 42:4
75:16,18,21
**going** 5:14,25
6:18 7:20,24
7:25 9:21
18:13 20:10
22:10,11 28:6
29:7,22 30:4
30:17 31:25
32:3,11 33:24
34:10 35:8
48:19,23 54:21
56:13 64:7
67:22,24,24
73:7
**good** 6:11 23:6
**graham** 37:4
44:19 45:4,5
52:4,20 53:3,4
53:6 54:1,2,2
55:8,9 60:7,8
62:16
**grahams** 37:5
**ground** 17:5
**grounds** 29:4,6
29:19 30:2
45:14 52:12
**grove** 60:9
**grunting** 6:7
**guess** 10:18
13:19 15:12
26:17 42:4
45:21 62:15
**gustine** 60:16
63:7,8

**H**

**hall** 2:20 3:9
81:8
**hand** 6:18 11:21
13:11 35:8
**handcuff** 44:8
**handcuffed** 4:5
10:16 24:16,20
39:6 41:3
43:19,20 52:9
**handcuffing**

Page 85

39:16 41:6
43:23 44:13
51:23 52:1
60:1 74:1
**handcuffs** 25:20
28:16,24 29:2
29:6,16,21
30:3,9,12,18
30:24 32:21
33:7 34:2
38:17 39:4,18
39:19,21 40:7
40:9,12,19,21
41:10 42:14,15
42:16,22 43:2
43:13 47:1,9
48:13,24 50:8
52:13 55:25
56:4,17 64:3,5
64:15,21 65:1
65:16 66:12,17
67:4 69:20
70:2,9,9 72:8
78:16
**handed** 10:25
16:6 22:3
41:23
**handle** 14:25
**hang** 31:22
**hap** 50:10
**happen** 46:22
**happened** 10:1
11:15 14:1
16:16 46:13
53:15
**happens** 13:6,9
13:16
**head** 6:7,9
**headquarters**
13:12
**hear** 21:22
**hell** 30:21
**hereunto** 81:14
**herewith** 81:13
**herman** 1:15
2:12,13 5:11
5:13 7:4,9,13

7:14 8:12,13
8:20,23,24
9:23,25 18:16
18:18 22:7,15
22:21,24 23:1
23:3,6,7 27:21
27:23,24 29:10
29:14 31:4,6,9
31:11,14,16
32:1,3,6,13,16
49:3,8 67:17
67:24 68:4,11
68:18 69:14
71:12,14,17
74:12,15,17
77:2,5 78:3,6
79:14,17,25
**hes** 7:5 8:18
29:12 30:5,13
30:21 31:7,9
31:11,14,22,24
32:10 36:15
38:2,10 41:1,1
50:14 65:11
70:6,10
**hey** 26:15
**hiawatha** 1:24

————————
**I**
**id** 7:4 19:23
**idea** 62:20
**identification**
5:3 22:2 35:7
41:21 44:1,10
52:10
**identified** 18:10
33:24
**identify** 12:2
27:14 41:24
**il** 1:20 81:22
**ill** 10:6,7 29:11
31:18 39:4
43:7 46:15
67:21 78:4
79:24
**illinois** 81:5
**im** 5:14,25 8:25

9:2,2,21,23
16:7 18:13
19:25 20:1
21:1,22 22:19
24:15 26:8
27:18 28:1,1
29:7,19,22
30:4 31:1,17
32:3 34:10,16
35:8,20 39:24
44:2 50:15
54:21 56:13
58:13,25 59:23
66:22,22 67:15
68:2,7 76:16
**imagine** 76:10
**important** 41:6
**improperly** 17:4
25:5 40:19
**inadvertently**
79:8
**incident** 7:17
15:6 16:10
17:3 35:1,3
64:12
**incidents** 9:13
**include** 47:8
**included** 14:18
37:7
**includes** 51:21
**including** 69:15
**index** 1:13 4:1
**indicate** 43:16
43:18 44:16
51:24 75:25
**indicates** 43:20
**indication** 42:21
**individual** 30:8
30:11 42:10
70:3
**individually**
1:10 3:5
**individuals**
76:24
**industry** 20:22
**inform** 14:16
**information**

13:21,24 14:3
16:12 17:6,16
19:6 25:24
27:13,15 30:7
30:10,14 32:19
34:13,16 45:2
45:9,17 47:18
54:23 57:5,8
58:2,6 59:13
59:22 60:2,18
61:1 62:12
66:9 69:4
72:15 73:3
**informed** 39:5
65:11,18
**initialed** 75:5
**initially** 16:19
56:20
**input** 75:12
**inside** 45:19
60:11
**inspector** 75:19
**instance** 33:14
**instruct** 32:11
**instructing** 32:7
**insure** 28:24
**interaction** 9:18
10:18
**internal** 9:5,8,11
9:12 10:23
11:19 12:4,8
13:18 14:24,24
23:14 75:17
**internet** 12:10
12:25 13:7
**interpreted**
76:18,21
**interrupt** 10:4
**intradepartm...**
4:8
**introduced** 5:14
**investigate** 11:1
11:21 15:4
30:18 33:23
48:19,23
**investigated**
7:17 18:22

53:12
**investigating**
17:15 64:11
69:6
**investigation**
9:13 11:23
14:19 16:6,14
16:22 17:9
18:11 20:11
23:11 24:11,19
25:1,10,21
36:18 41:7
42:3,5 45:14
47:10 49:14,16
49:23 60:4,5
61:14 66:8,15
67:2,20 68:1
68:17 71:3
73:8
**investigations**
9:5,9,11 14:23
16:1
**investigators**
13:19 14:25
**involve** 15:9
76:15
**involved** 15:6,10
16:9 17:19
35:1 57:4
78:19
**involvement**
75:13
**involves** 27:8
**involving** 9:13
**isnt** 62:6
**issuance** 3:11
**issue** 36:1,20
**issues** 8:6 9:17
**ive** 6:1 22:3
41:23 68:11
79:6,14

————————
**J**
**jerry** 75:16
**job** 9:7 41:16
**jogging** 61:18,19
62:13

Page 86

**justified** 25:11
  25:14,20
**justify** 29:6
  30:10

**K**

**k** 2:19
**kevin** 1:3 2:3 4:6
  39:18,22 43:12
**kind** 16:1 17:19
  36:3 52:23
  55:3 59:21
  72:3
**know** 8:5,25
  12:19 13:23
  14:4,25 15:1
  16:10,11 19:16
  20:6,7,12
  23:15 28:25
  29:1,15 30:15
  30:18 31:17
  32:13,17 33:19
  33:22,22 39:18
  40:11 45:21,23
  46:21 47:19
  48:5,21 52:22
  53:7 57:10
  58:15,18 60:24
  61:12 62:9,22
  68:1,8,15 69:5
  70:6 73:17,20
**knowing** 70:10
**knowledge** 7:16
  7:24 9:23 10:1
  10:2 11:3,15
  15:8 39:22
  42:22 56:18
  57:9 72:9,21
  72:25
**knows** 29:10
  31:6,12

**L**

**label** 23:19
**lacks** 34:5
**ladue** 2:14
**lastly** 25:23

**lathan** 37:22,23
  61:2,7,13
  62:16
**lauer** 1:10,10
  3:4,5 5:6 6:13
  29:8 79:20
**law** 48:1,2 58:22
**lawrence** 75:20
**lawsuit** 7:18
**leading** 24:9
**leads** 62:12
**learned** 45:13
**leave** 28:11 39:4
  65:15 66:11
**legal** 24:4 25:15
  26:23 27:20
  33:10 40:5
  50:9 65:20,24
  66:18
**letter** 22:5 23:22
**letters** 43:5
**leyshock** 75:16
**lieutenant** 1:10
  1:10 3:3,4 5:5
  6:17 7:11 9:2
  29:8 75:18,20
  79:20
**limit** 6:5 16:14
**line** 27:22 49:6
  68:14 69:12
  75:15,20
**lines** 75:21
**lingo** 26:12
**listed** 38:4
**little** 7:12 9:22
  18:14 38:25
  58:14 59:12
**location** 60:6,16
  60:24 63:5
  65:16
**look** 12:6 16:16
  16:19 18:11
  19:8 30:20
  41:22 43:7
  60:12,25
**looked** 25:12,22
**looking** 19:1

38:11 44:2
  45:11
**looks** 38:1
**loud** 6:6
**louis** 1:9,25 2:15
  2:20 3:3,9 4:8
  4:10 5:5 6:16
  7:2,7 9:20
  12:16 16:18
  20:24 26:1,2,5
  29:5,20 32:17
  47:2 48:10
  50:6,12 56:11
  56:16,24 58:1
  58:11 63:21
  64:10,19 66:14
  67:1,11 68:23
  70:1,15,17
  71:6 72:7
  73:25 74:2
  77:16,24 78:11
  78:17 79:2
  81:8
**ludwig** 15:12,20
  37:12,13
**lurking** 52:23

**M**

**m** 5:8 74:14,14
  80:2
**mail** 13:10
**main** 12:21
**major** 75:16
**making** 13:20
  77:10
**manual** 20:21,22
  20:25
**mark** 2:13
**marked** 5:2 6:19
  22:2 35:7,8
  41:21,23 45:8
**market** 2:19 3:8
  81:8
**married** 15:13
**masuga** 1:20,24
  3:9 81:3,22
**matches** 30:14

**matter** 5:22 64:9
  75:13
**matters** 24:23
**mcgowan** 2:19
  7:8,10 8:10,18
  8:22 9:21
  18:13 21:22
  22:14,19,23,25
  23:2,4 24:4,12
  25:15 26:23
  27:4,11,19,22
  28:13 29:7,11
  30:4 31:1,5,7
  31:10,13,22
  32:2,5,8,14
  33:8,10 34:3,5
  40:5 48:14
  50:9,14 52:14
  54:21 56:1
  58:13 59:7
  65:4,9,20,24
  66:18,21 67:15
  67:21 69:3
  70:5 71:9,13
  74:7,10 76:25
  77:19 78:1,22
  79:16,18
**mean** 8:10 9:7
  18:8 19:21
  20:21 21:17
  27:12 28:1,14
  31:9,13,22
  33:11,14 36:20
  45:21,22 48:16
  50:10 52:2
  53:8 61:17
  62:15 63:19
  66:6,20 68:16
  69:13 70:16
  76:8 77:2,4
**meaning** 77:6
**means** 46:19
  62:20
**meet** 14:4,8
**meeting** 14:10
  14:13,17
**meets** 18:4

**memo** 37:3 38:6
  44:16 45:5,8
**memos** 17:18
  36:5,10 37:8
  38:21 43:5
  49:18
**mentioned**
  15:22 36:17
  39:9 76:6
**mere** 65:14
**merely** 48:11
**metropolitan**
  4:8,10
**mind** 7:5
**minute** 28:7
  41:22 48:25
  74:11
**missouri** 1:1,9
  2:1 3:3,9 5:5
  81:5,8
**misstates** 34:5
  48:14 78:22
**mo** 1:20,25 2:15
  2:20 4:8 81:23
**moran** 12:4
  13:19 14:9,11
  14:13,21
**morning** 5:13,15
**mouth** 34:8
**multiple** 78:2

**N**

**name** 5:13 6:12
  13:2,4 22:21
  57:10,13,14,19
  59:8 81:15
**named** 22:17,19
  22:21
**names** 15:21
**narrative** 10:10
**near** 60:11
**necessary** 77:10
**need** 13:21 20:6
  27:13 59:11
  78:7
**needed** 76:11,14
  76:21

MASUGA COURT REPORTING
314/781-1447

needs 76:15
ninth 43:8
nodding 26:20
  31:20
nos 6:8
note 78:4
noted 31:15
  71:14
nother 28:6
notice 3:11 4:3
  5:23 8:7
noticed 38:3
  45:18 52:21,22
notify 11:6
number 6:19
  30:6 39:17,23
  39:25 43:10
  58:9,12,21,24
  59:3,11,12,21
  75:9 79:1

**O**

o 44:7
object 9:21
  18:13 29:7
  30:4 54:21
objecting 31:1
  50:16 58:13
  67:15
objection 22:10
  24:4,12 25:15
  26:23 27:4,11
  27:19,20 31:15
  34:3 40:5
  48:14 50:9
  52:14 56:1
  59:7 65:4,9,20
  65:24 66:18
  69:3 70:5
  71:14 74:7
  76:25 77:19
  78:1,3,4,22
observations
  52:5
observing 52:25
occur 17:9 18:5
  19:17,17 46:11

46:12
occurred 7:16
  9:18 11:4
  16:23 19:19,20
  20:4,7 33:4,6
  50:11 68:15
office 2:18 3:8
  10:23 11:6
  19:6 81:7
officer 1:6 2:6
  5:13 10:12
  15:11 22:3,16
  26:11 27:9
  29:1,20 30:1,3
  30:7 32:19,20
  33:14 36:13,14
  36:15,21,25
  37:2,4,6,9,12
  37:13,14,17,18
  37:19,23 38:2
  38:5 39:6,7
  42:13,21 43:1
  43:3,4,14,17
  44:12,15,15,19
  44:22,23 45:2
  45:4,5,18
  47:19 48:11
  49:15,17,23
  52:4,20 53:1,1
  53:4,6,25
  54:13,16 55:7
  56:7,12,16,17
  60:6 62:16
  63:19,20,21,25
  64:3 65:11
  68:20 70:21
  71:23 72:7
officers 9:20
  10:15 11:7,10
  11:22 15:9
  16:8 17:17
  23:18 33:15
  34:14 35:1
  36:7 39:5
  41:13 42:11
  43:24 46:22
  48:16 50:3

51:22 52:8
53:18,23 55:2
57:4 58:23
66:8 68:22
69:20,21 70:2
70:9,11,12,20
72:22 73:1,4
74:4,20 78:12
78:19
offices 3:7 81:7
official 9:1
offtherecord
  17:1 35:4,21
  41:18 42:6
  50:23 60:14
oh 15:16 22:23
  22:23
okay 6:9,21 8:20
  8:23 9:4,12
  10:5,8,9,21
  11:2,24 12:13
  15:16 17:12,22
  20:18,24 21:8
  21:12,13,23
  23:24 24:8
  27:8,16 28:5
  29:13,18,25
  30:22 31:21
  32:23 33:5
  35:10 36:3
  37:3 39:11,13
  39:25 43:1,9
  43:11 46:6
  47:11,21 48:1
  48:18 49:13,17
  51:4 52:18
  54:9 55:13
  56:6 57:21,25
  58:18 60:10,25
  61:3 62:19
  63:17 64:8
  65:14 67:21
  72:18,20 73:16
  75:7,14 79:16
once 10:22,22
  18:9,9
options 13:10

order 19:12 21:9
  30:22 32:20
  46:24 50:6,19
ordered 26:11
ordering 27:9
  55:18 78:10
orders 20:17,20
  21:1,18
org 12:21
otoole 75:20
outside 16:11,17
  17:18 62:1

**P**

p 44:7
packet 39:9
page 1:14 4:1
  43:8 44:3,4
  49:6 51:11
  60:25 68:14
  69:12
pages 35:12,13
  35:15 39:12
  43:6 45:6 51:9
paragraph 44:3
  44:4,7 61:1,4
  62:15
paragraphs 8:2
  8:15 22:18,19
  22:21
park 4:5 45:19
  52:6 54:18,24
  60:9,11 61:15
  61:25,25 62:1
  62:14,17,24
  63:1
part 9:7,8 13:2
  14:19 15:9
  23:11 24:10,11
  24:18,25 25:1
  25:9,12,21
  41:16 47:10,11
  49:23 70:20
particular 13:25
  16:4 18:15
  21:11 49:9
  65:1 67:19

partly 6:25
pat 72:9
patdown 70:25
  71:1,2,4,8,15
  71:23 72:3
patrolled 63:3
patting 74:1
paul 1:10,10 3:4
  3:4 5:5 6:13
pause 21:24
pay 7:23
pedestrian
  26:17,21
people 12:16
  61:24,25 72:15
  75:9,11,24
  76:5
person 27:3,9
  28:11 30:3,14
  30:19 33:17
  34:2,12 36:20
  37:3 43:18
  52:13 56:18
  64:3 69:5
  71:20,23 72:17
  76:11,13
personal 7:16,24
personally 14:14
persons 48:17
plac 30:11
place 9:18 20:6
  28:16 29:20
  30:3,17 39:17
  43:12 46:14
  52:12 54:12,16
  54:16,24 56:16
  67:13 71:8
placed 23:21
  28:24 29:16
  40:6,8,21
  41:10 42:14,22
  43:1 64:3,15
  65:2,16 66:17
  67:4 70:2
placing 25:20
  29:6 30:11
  50:7 64:5,21

78:16
**plaintiff** 1:4,11
2:4,11 3:2,7
5:7
**plaintiffs** 4:3,5,7
4:10 5:2 6:19
22:1 35:6,9
41:20
**please** 6:12 49:4
68:12
**pocket** 72:4
**point** 5:24 10:4
10:4 13:7 17:1
21:24 22:1
27:2,25 35:4,6
35:21 41:18,20
42:6 49:5
50:23 60:14
68:13 69:11
74:13
**police** 4:5,8,10
6:16,16 8:1 9:2
10:12,19 11:10
12:16 19:2
20:24 23:20,22
26:3,4,10,12
27:8 29:5,20
30:1,2 32:18
32:19,19 47:2
48:10 50:6
52:12 54:13,15
55:9 56:11,16
57:1 58:1,11
58:23 63:21
64:11,19 66:14
67:2,11 68:22
70:1,17 71:7
72:7,22,25
73:25 74:2
75:19,19,22
77:16,25 78:11
78:17 79:2
**policies** 8:1
16:17 29:12
32:17 51:20
58:1 64:10,18
67:22 68:1

77:10,13,24
78:11,18 79:2
**policing** 75:15
**policy** 19:8,9
20:21,22 21:9
21:13 25:25
26:2,3 29:4
30:24 47:2
48:11 50:6,13
56:11,15,23
58:10,17 66:14
67:1,11 69:25
70:14 71:6
72:6 73:25
74:3 76:2,9,10
76:14,15,20,23
77:6,9,15,16
**porter** 15:11,13
15:17 36:21
**portion** 12:23
**position** 9:1,1
37:5
**possible** 59:14
**possibly** 13:5
33:25 63:13
**precise** 49:1,3
69:9
**precisely** 17:23
**prefer** 70:25
**prepared** 8:8,15
16:13 63:22
**prerequisite**
71:22
**present** 14:10
**previously** 6:19
**printout** 38:3,11
**prior** 5:1 34:6
48:14 61:12
69:1 72:9,21
78:22
**private** 20:21
**probably** 13:23
16:3 17:22
23:15
**procedure** 3:6
**procedures**
20:23

**proceedings**
21:25
**process** 13:17
**produced** 5:6
7:6
**production** 22:9
**prohibited** 21:3
21:6
**properly** 17:4,7
17:8
**prove** 17:20
**provide** 25:25
27:15 43:25
44:9 57:19,23
59:20
**provided** 60:17
60:18 61:1
**public** 12:22
30:2 52:12
54:12 67:12
68:24 70:1
71:8 72:8
**pursuant** 3:5
81:6
**put** 7:23 23:20
29:2 30:9,23
32:14,21 33:7
34:2,7 39:18
40:11 48:13,24
70:8,8,9 72:8
**putting** 39:21
40:19 47:9
52:13 55:25
56:3 69:19

**Q**

**ques** 35:2
**question** 6:5
17:23 20:4
30:8,23 31:18
39:17 40:18
43:10 45:11
47:7 49:2,4,6
49:22 56:14
58:16 66:25
68:12,14 69:7
69:9,12 71:9

76:8,23
**questioned**
24:23 34:4
48:13
**questioning**
38:17 57:3
78:25
**questions** 1:14
5:19,20,20
7:14 8:13,24
9:25 10:17
18:18 23:7
27:24 29:14
31:16 32:16
34:11 35:2
36:7 38:20,23
39:2,15 41:11
49:8 57:4 68:4
68:18 69:14
71:17 74:17
77:5 78:6
79:14,17,18
**quick** 32:8 72:3
74:10

**R**

**r** 41:25 42:1
81:1
**radio** 44:23
**reach** 50:20,25
67:19 71:3
74:19
**reached** 50:20
66:16 67:3
**read** 31:18 32:8
34:23 41:11
49:3,5 66:24
66:25 68:12,13
69:9,11 78:7
79:20
**readable** 5:24
**reading** 24:7
40:25
**really** 26:25
28:15
**reason** 26:25
27:6,7 33:22

40:20,20,23
41:5 43:17
44:13 47:14,17
49:14,14 53:22
54:5,6,8 56:3
62:6,11,13
69:1 74:4
78:19,20
**reasonable**
32:25 33:3,6
34:17 71:16
73:11
**reasons** 24:10,19
33:12 39:3,20
41:9 42:14
43:22 47:1,8
51:22,25 53:18
53:22,23 64:4
69:19
**recall** 13:4 14:2
**recalled** 52:7
**received** 11:25
18:19 45:17
47:18 71:19
**receiving** 34:22
44:18
**recipients** 38:24
**recognize** 22:4
35:11
**recollect** 34:18
**recollection**
10:11 12:3
**recommendati...**
46:17,18 47:4
47:12 50:20
51:12 74:21,25
75:22
**recommendati...**
76:1,2,6 77:11
**record** 5:25 6:12
7:5 67:18
74:16
**records** 38:12
**referenced** 5:22
**referring** 44:3
**refuse** 26:22
58:22,23 59:22

60:1
**refused** 59:2
**regard** 8:11
**regarding** 39:3
  64:4
**rejis** 59:4,8,14
**relate** 36:1
**relationship** 9:4
  9:6
**released** 10:17
  30:21
**relevant** 29:24
  40:20,21
**remember** 12:9
  23:13
**remind** 8:25
**report** 17:17
  43:16,18 49:21
  51:6,7,24 56:7
  59:4,8,14
  60:12 61:5
  62:12 63:22,24
  64:2 68:3
  73:24 74:25
**reported** 55:2,3
  55:15
**reporter** 1:20
  3:10,11 5:21
  6:8 49:5 68:13
  69:11 81:4,4
**reporting** 1:24
**reports** 4:8,11
  16:13 17:17
  19:2,2 62:16
**representative**
  7:1,1,6 8:7
  31:23
**request** 44:19
  58:2,7,23
**requested** 37:1,9
  37:25 52:7
**requesting** 52:4
  60:21
**require** 58:11
**required** 17:6,7
  21:2,5 32:19
  32:20 41:16

57:13 63:22
  75:24 76:2,9
  76:24 77:7
**requirement**
  18:4 71:22
**requires** 30:25
  53:17
**respect** 9:18
  22:17 32:18
  71:7
**respond** 10:15
  33:15 60:22
**responded** 37:2
  37:14,19 38:12
  49:18 61:13
**responding** 38:4
**response** 34:21
  41:11,14 43:13
  43:20 44:16
  58:18,19 76:23
**returned** 81:13
**review** 76:3,9,11
  76:14,23
**reviewed** 75:9
  75:12,25 76:21
**revised** 4:3
**rewritten** 76:15
**right** 6:3,11,18
  7:13 8:23 9:16
  10:8 11:14
  12:5,19,23
  13:6,13,16
  14:7,10 15:5
  15:14,20,21,23
  16:25 18:16,24
  19:5,11,22
  20:23 21:6,16
  21:20 22:7
  23:1 24:1
  25:13,23 26:3
  26:7,8,15,19
  26:21 27:2
  28:10,11,21
  30:10 33:18
  34:1,4,12,15
  34:18,21 35:16
  36:6,9,20,22

37:11,21 38:20
  39:8,10,20
  40:8,15,17,25
  41:12 43:22
  44:5,12,23
  45:1,8,13,20
  45:25 46:15,24
  48:9,20 49:1
  50:17,22 51:10
  53:2,14,20
  54:2 55:11,22
  57:1,16 58:4
  58:10 59:17
  61:4,10,11,24
  62:2,4,10
  63:24 64:2,22
  65:6,23 66:5
  66:10,13,24
  67:8,25 68:21
  68:25 70:19,20
  71:21 73:7,14
  73:19 74:6,9
  74:15 76:17,20
  76:22 77:9,13
  79:20
**rights** 65:12
**road** 2:14
**robert** 2:13
**role** 36:24
**room** 2:20 3:8
  81:8
**round** 15:18
**routine** 9:8
**rules** 3:6,13 17:5
  20:16,17,23
**run** 4:5 27:23
  59:4,8,14 62:1
  62:1
**running** 27:20
  61:22

———————
**S**
———————
**s** 41:25 42:1
**safe** 48:23,24
**safety** 9:3 36:15
  37:6 43:21,21
  43:23,24,24

44:8,8 56:4,5
  56:13,17 69:20
  69:21 70:2,3
  70:11,12,21
**sam** 75:23
**sara** 1:20 3:9
  21:22 79:23
  81:3,22
**saw** 60:19 61:7,7
**saying** 13:8
  19:15 79:22
**says** 40:2 44:7
  76:9
**scene** 36:16,19
  36:22,24,25
  37:15,20,25
  69:22
**schwartz** 2:12
**scott** 75:18
**search** 70:25
  71:1,2,4,8,15
  71:23 72:3
**secretary** 23:15
**security** 58:9,12
  58:21,24 59:3
  59:11,12,21
  60:2 79:1
**see** 16:17 18:12
  19:8 29:10
  45:11 53:11
  60:12 61:4
**seen** 6:22 29:21
  30:1 52:5 60:6
  60:9 61:6 63:1
**sees** 30:13
**seize** 50:7
**seized** 40:4
  65:23 66:17,23
**seizing** 51:23
**seizure** 25:14
  26:12 27:3,10
  27:17,25 28:9
  28:12,17,22
  38:17 39:3,16
  47:1,9 51:25
  66:2 78:9
**sent** 11:5 14:19

15:3 23:15
  36:12,13 37:3
  43:4
**sentence** 44:7
**separate** 31:8
  35:24 41:14
**separately** 35:14
**sergeant** 8:22
  12:4 13:19
  14:9 32:2
  37:22 61:2,7
  61:13 62:16
  71:10
**series** 5:19
**set** 9:13 20:23
**seven** 38:24 43:6
**shadow** 63:12,14
  63:17
**shadows** 62:17
  62:19,21
**shakes** 6:9
**shaking** 6:6
**sheet** 4:11 42:1
**sheets** 4:8
**shes** 37:6
**shorthand** 3:10
  81:3,11
**shorts** 61:21,22
**show** 18:4 19:18
  46:11 49:14
**showed** 52:3
**showing** 46:13
**sic** 44:6 60:22
**sidewalk** 60:10
  60:19 61:9
  63:8,11
**sign** 13:24 14:3
  75:4
**signature** 3:15
  79:21,22,24
  80:3
**signed** 75:3,21
  77:4
**simply** 26:14
**sir** 23:8 35:8
  41:22
**six** 43:5

slmpd 12:21
slowly 10:3
social 58:8,12,21
  58:23 59:2,11
  59:12,20 60:2
  79:1
somebody 11:24
  12:2,24 13:7
  26:18 28:8
  29:16 30:15,23
  33:2,12,24
  45:24 56:12
  57:12 64:21
sorry 8:25 21:2
  21:22 22:20
  24:15 26:8
  35:20 39:24
sort 56:8
sounded 45:23
sounds 7:22
  45:23
speak 7:11 20:1
speaking 22:16
special 19:12
  20:17,20 21:1
  21:9,18
specific 12:23
  13:4
specifically
  15:22 40:2
specified 22:24
specify 23:18
speculation 30:5
  52:15 65:10
  77:1
squarely 67:16
st 1:9,25 2:15,20
  3:3,9 4:8,10
  5:5 6:16 7:2,7
  9:20 12:16
  16:18 20:24
  26:1,2,5 29:5
  29:20 32:17
  47:2 48:10
  50:6,12 56:11
  56:16,24 58:1
  58:11 63:21

64:10,19 66:14
  67:1,11 68:23
  70:1,15,17
  71:6 72:7
  73:25 74:2
  77:16,24 78:11
  78:17 79:2
  81:8
stand 26:15
standard 58:16
standing 60:19
  61:5,8 62:17
  63:11,11,14,17
start 41:12
state 6:11 51:17
  63:15
stated 44:7
statement 38:14
  62:8
statements 16:7
  16:8 20:13
  34:25,25 61:17
states 1:1 2:1
  81:5
step 15:25 72:5
sticky 68:7
stipulate 22:11
stipulated 3:1,14
stop 6:2 25:10
  26:11,14 27:1
  27:5,9,17,25
  28:8,10 30:8
  30:17,23 32:20
  33:2,7,12,24
  38:16 39:3,16
  47:1,8,14,17
  50:7 51:25
  55:18 62:18
  74:4 77:17,22
  78:10
stopped 10:12
  10:15 34:13
  40:1,3 44:17
  44:18 47:22
  48:8,12 57:12
  60:23 66:7,10
  66:16 67:4

73:11,16,19
stopping 27:7
  30:11 44:20,21
  45:18,19 51:22
  52:21 74:1
stops 10:13
  29:22
straight 9:16
street 2:19 3:8
  26:18 29:22
  30:2,23 32:21
  48:12 72:8,16
  81:8
strictly 16:14
strike 56:14
  69:24
subject 11:23
  58:14 71:4,8
subpoena 5:23
subscribed
  81:14
suggest 45:15
suite 2:14
summarize
  77:15
summary 42:9,9
  42:12,25 43:16
  43:17
summoned
  36:25
supervisor
  37:24
supplement
  79:11
support 19:15
  19:16 20:15
sure 26:7 27:21
  35:13 39:14
  68:8 74:12
suspect 56:17
suspected 49:24
suspicion 30:25
  32:25 33:3,6
  34:17 73:11,12
  77:23 78:13
suspicious 10:14
  33:15,16,18,25

34:2 37:1
  44:25 45:3,10
  45:16 47:20,23
  47:24 48:2,4,4
  48:11,16 63:18
  69:5 71:16,20
  73:5,6
sustained 19:14
  19:15 20:15,15
  46:3,4,6,7,10
  46:16,18,21
  47:13
sworn 5:6 81:10

_____
        T
_____
t 41:25 42:1 81:1
  81:1
take 8:14 10:3
  15:25 41:22
  72:5
taken 1:11 3:5
  3:12 5:16,21
  39:1 65:6
  74:13 81:11
talk 15:25 20:1
  26:18 56:6
  57:3 64:7
  68:21 70:22
talked 52:9
talking 11:9
  18:15,24 25:16
  26:8 31:19
tell 9:17 10:6,7
  14:13,14 18:6
  21:10 34:9,10
  35:16 36:12
  38:9 42:13
  58:17 71:2
  75:11 81:10
telling 30:22
  34:1 48:9
  53:22 54:11
  55:21 56:10
  64:9,14 65:14
  66:13 67:9
  69:25 71:21
  72:6

temporarily
  29:3
ten 16:3,3
tensions 48:7,8
term 28:6 46:16
terminology
  66:4
testified 5:7
testify 6:25 8:3,8
  8:15 45:22
testimony 34:6
  47:18 78:23
thank 27:22
  31:5 79:16,25
  80:1
thats 5:22 7:3,8
  7:19,22 9:22
  11:13,14 20:10
  20:23 22:14
  23:3 24:3,6,6
  26:8 28:18,19
  29:22,23 31:4
  31:8 32:1,3
  34:8,9 35:19
  38:8 39:12
  40:15 45:8
  48:7,25 50:10
  50:10,10 52:7
  52:8 53:10
  54:8,8,10
  56:13 58:16
  61:7 62:3,4,8,9
  64:17,18,24
  66:4,22,23
  69:6 70:16,16
  70:20 72:2
  73:7 75:15
  78:3 79:14
theres 14:23
  16:9 17:18
  19:12,12,17,18
  19:20 20:22
  27:7 28:3
  33:11,11 54:12
  72:3,16 77:2,6
theyre 26:14
  28:23 30:17

35:24 38:25
48:19,19 54:13
69:6 72:2 73:7
**theyve** 27:14,14
28:23 29:21
33:23
**thing** 12:12 13:9
13:16 35:19
**things** 20:3,4
61:25 62:3
**think** 7:11 15:15
15:21 19:7
29:7 32:9,11
32:12 44:6
52:6 68:2
71:21 79:6
**thinking** 45:22
**third** 44:6,6 61:1
**thought** 10:12
45:2 49:18,24
50:3,12 56:7
**three** 43:5
**thursday** 31:3
32:2,15 67:23
**ticket** 52:3
**till** 29:3
**time** 5:25 11:3
11:14 15:12
30:8 39:4
69:10 70:6
73:10,16,19
74:3 75:17,23
79:25
**times** 52:6 78:2
**timmerman**
2:13 53:3 54:1
55:8 60:7
**today** 7:21,23
79:19,23
**told** 7:3 8:16,25
28:23 38:15
49:23 65:12,15
**top** 75:6
**topic** 7:10,11
8:11,19 29:8
31:2,7,10,24
32:12,15 50:15

58:14 67:16,16
71:10,13
**topics** 7:10
22:25
**tower** 60:9
**track** 62:1
**traffic** 9:3 10:13
36:15 37:6
52:22 60:23
**training** 68:20
68:22,23 70:18
70:20
**transcribed**
81:12
**transcript** 79:21
**transcription**
81:13
**transmittal** 4:11
42:1
**treated** 10:18
40:23,24 47:5
47:7 48:25
**treatment** 11:11
17:13 23:25
51:20
**tree** 62:17 63:12
63:14,18
**treelined** 63:9
**trees** 52:23
62:20,21,24
**trial** 5:22 78:3
**true** 22:11 34:9
34:9,9,10 62:7
74:24
**trust** 79:22
**truth** 81:10
**try** 17:23 19:6
74:18
**trying** 20:1
53:21 68:7
72:2 79:7,7
**tshirt** 61:22
**two** 52:6
**type** 12:12 16:12
32:24 72:14

_____ U _____

**uhhuh** 6:7 10:24
13:25 14:21
15:2 16:21
30:16 45:7
57:2 60:13
63:4
**ultimately** 17:24
45:25 55:24
**umhmm** 6:7,9
**uncivil** 11:11
17:12 21:21
23:25 25:4
51:20
**uncivilly** 10:19
23:19 40:24
47:5,6,6,7
**uncomfortable**
45:23 52:24
**underlying** 7:17
**understand** 5:18
6:10,24 7:15
16:4 17:22
18:9 19:25
20:16 22:7
53:12 68:9
69:7 71:12
79:11
**understanding**
13:13 36:16
59:1 64:10,18
70:14 76:20
**understood** 9:17
**unfounded**
19:18 46:2,3,7
46:12
**unit** 9:10 11:22
15:4,6,9
**united** 1:1 2:1
**unofficial** 21:13
21:14
**use** 46:15 66:4
70:23
**usually** 72:16

_____ V _____

**vague** 9:22
18:14 30:4

52:14 54:21
65:25 66:21
69:3 70:5
**various** 9:20
74:20
**vehicles** 60:23
**verbally** 65:18
**verify** 13:22
**versus** 20:8
**video** 16:10
17:20
**violate** 78:11
**violated** 19:8
76:11 77:17
**violation** 18:4,6
19:19 50:18
58:22
**violations** 16:23
52:22 60:23
**vs** 1:5 2:5

_____ W _____

**wait** 43:17
**waive** 79:21,22
79:24
**waived** 3:11,15
80:3
**walking** 72:15
**wallace** 1:6 2:6
15:11 37:17,18
39:6 43:3,4,14
43:18 44:7,13
44:15,16
**wallaces** 44:21
**want** 5:15 8:5
13:23 26:18
27:23 34:7
35:12 67:25
68:7 73:13
79:11,17
**wanted** 38:14
45:24 57:10
**wanting** 73:14
**wasnt** 19:16
38:13 46:10
49:17 53:10,11
55:14

**watch** 54:12
**watched** 52:17
**watches** 52:12
**watching** 45:19
52:6,11,16,19
52:23 53:5,5
53:24 60:22
62:17
**way** 14:16 15:18
17:20 22:15
27:6 46:20
48:25 50:17
63:18 74:24
76:18,19
**weapon** 56:8,19
72:4
**website** 12:15,19
12:21,24
**went** 19:6
**weve** 31:18
41:23 71:15
79:4
**whats** 10:1 11:2
11:3 13:8,16
17:6,6,7,7,7
19:1 28:21
32:18 35:8
46:9 53:4,5
66:2
**whereof** 81:14
**whos** 8:20
**withdraw** 19:23
**withdrawn**
19:20
**witness** 5:7
27:13,15 30:20
31:14 32:7
79:24 80:1
81:9,14
**witnesses** 16:11
16:11 17:18
18:24
**word** 70:22
**words** 20:2 34:7
**work** 11:2
**working** 37:24
**worried** 56:12

wouldnt 7:5
40:18
**wrap** 74:18
**written** 5:21
16:15
**wrong** 34:16
46:23 53:4,5,8
53:15 55:11
**wrote** 68:3

---
**X**
---

---
**Y**
---

**yeah** 32:11,11
32:13 46:22
74:12,12
**youd** 20:22
32:24 43:7
**youre** 7:20,24,25
8:3 11:9 16:5
22:9,10 27:1,5
28:8,24 29:8
34:1 53:22
54:11 59:21
65:14 67:9
71:21 72:5
79:22
**youve** 17:24
18:9,10,10
20:2 45:13
63:1,3 79:4

---
**Z**
---

---
**0**
---

**02** 5:8
**084002993** 1:20
81:22

---
**1**
---

**1** 1:11 3:7 7:10
8:11,12,16
23:4,4 31:23
32:8 39:12
81:6
**10** 4:11 7:10
8:11,12,16,17
23:5 43:6,6

74:14,14 80:2
**100** 4:3 5:2 6:20
**101** 4:5 22:1,3
23:8 34:22
**1012** 1:20 81:23
**102** 4:7 35:6,9
35:19,23 43:7
45:6
**10210** 43:7
**1023** 39:13
**1024** 39:13
**1025** 45:9
**1029** 43:7
**103** 4:10 41:20
41:23 42:8
44:2 50:25
51:2,3,6 60:25
74:21,24
**11** 8:17,19 29:8
29:9 30:6 31:2
31:8,24 32:12
50:15 58:14
67:16,16 68:14
71:10
**12** 16:3
**1200** 2:19 3:8
81:7
**14** 35:12,13,15
**15** 4:11
**16cv01721plc**
1:5 2:5

---
**2**
---

**2** 38:2 39:12,17
43:10
**201** 2:14
**2015** 9:19 38:6,7
**2018** 1:11 3:7
81:7,15
**2033** 1:24
**21** 69:12
**21st** 81:15
**22** 4:5
**29** 38:7

---
**3**
---

**3** 38:6 39:12

44:3,4 51:9
**314** 2:20 3:8
81:8
**35** 4:7
**39** 74:14

---
**4**
---

**4** 1:5 2:5 39:12
51:9 60:25
**41** 4:10
**44** 74:14
**48** 49:6

---
**5**
---

**5** 1:15 39:23,25
44:4 45:6 51:9
51:9,9,9 60:25
**51** 80:2

---
**6**
---

**6** 4:3 7:10 8:11
8:12 9:19 23:4
32:9 45:6
**63103** 2:20
**63124** 2:15
**631431215** 1:25
**67** 68:14
**68** 69:12

---
**7**
---

**7** 4:8,11 7:11
8:11,12,16
23:5 31:24

---
**8**
---

**8** 8:15,15
**8820** 2:14

---
**9**
---

**9** 5:8 8:15,15
43:6,6 49:6

MASUGA COURT REPORTING
314/781-1447